UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL FINANCE CORPORATION,
not in its individual capacity but solely as the
Trustee for the IFC-Netherlands Carbon Facility,

07 Civ. 5451 (SHS) (ECF)

*Plaintiff,*

-against-

KORAT WASTE TO ENERGY CO. LTD.,
(a/k/a KHORAT WASTE TO ENERGY CO.),

*Defendant.*

## MEMORANDUM OF LAW IN OPPOSITION TO
## DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (FAV-1446)
Maria N. Lerner (ML-2546)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

September 7, 2007

*Counsel for International Finance Corporation*

## TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

FACTUAL BACKGROUND....................................................................................2

ARGUMENT...........................................................................................................5

    I.      DEFENDANT HAS IGNORED THE PROPER STANDARD OF
           REVIEW ...........................................................................................5

           A.      The Standard Of Review On A Motion To Dismiss Requires
                  That All Factual Allegations In The Complaint And Inferences
                  Favorable To IFC Be Accepted As True ............................................5

           B.      Defendant's Motion Is Premised On Its Own Interpretation Of
                  The Facts Surrounding The Allegations In The Complaint, And
                  Must Therefore Be Denied ................................................................6

    II.     IFC HAS STATED A CLAIM FOR BREACH OF THE IMPLIED
           COVENANT OF GOOD FAITH AND FAIR DEALING ....................9

           A.      IFC Has Alleged Facts Sufficient To Demonstrate That
                  Defendant Did Not Act In Good Faith In Performing Under
                  The LoI, Thereby Injuring IFC's Right To The Fruits Of That
                  Agreement ......................................................................................10

           B.      Defendant's Arguments Regarding IFC's Claim For The
                  Breach Of The Covenant Of Good Faith And Fair Dealing
                  Are Unavailing ...............................................................................12

           C.      IFC May Seek Expectation Damages For Defendant's Breach
                  Of The Covenant Of Good Faith And Fair Dealing ....................13

    III.    IFC HAS STATED A CLAIM FOR BREACH OF CONTRACT ......15

           A.      The Complaint Alleges That A Binding Agreement Existed
                  Between The Parties .......................................................................15

                1.      Application Of The *Winston* Factors To IFC's Breach
                      Of Contract Claim Demonstrates That IFC Has Stated
                      A Claim...........................................................................17

                2.      Application Of The *Arcadian Phosphates* Factors To
                      IFC's Breach Of Contract Claim Demonstrates That
                    IFC Has Stated A Claim ................................................20

## TABLE OF CONTENTS
### (cont'd)

Page

B.    IFC Was Prevented From Performing On The Agreement
      By Defendant's Breach...................................................................21

C.    Defendant Breached The June 2005 Agreement .......................................22

D.    IFC Suffered Damages As A Result Of Defendant's Breach
      Of The Agreement ......................................................................22

IV.    DEFENDANT HAS CONCEDED LIABILITY ON IFC'S ENTIRE
       CLAIM FOR TERMINATION PAYMENT .......................................................23

V.    IFC HAS STATED A CLAIM FOR INDEMNIFICATION ................................23

CONCLUSION ...........................................................................................25

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

<u>FEDERAL CASES</u>

*Alusit, Ltd. v. Aluglas of Pa.*,
No. 89 Civ. 3849 (CSH), 1990 U.S. Dist. LEXIS 16755 (S.D.N.Y. Dec. 4, 1990) ........................ 8

*Apex Oil Co. v. Vanguard Oil & Service Co., Inc.*,
760 F.2d 417 (2d Cir. 1985) ......................................................................................................... 17

*Arcadian Phosphates, Inc. v. Arcadian Corp.*,
884 F.2d 69 (2d Cir. 1989) ..................................................................................................*passim*

*ARI and Co., Inc. v. Regent Int'l. Corp.*,
273 F. Supp. 2d 518 (S.D.N.Y. 2003) ........................................................................................... 9

*Bazak Int'l. Corp. v. Tarrant Apparel Group*,
378 F. Supp. 2d 377 (S.D.N.Y. 2005) ......................................................................................... 20

*Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*,
361 F. Supp. 2d 283 (S.D.N.Y. 2005) ......................................................................................... 21

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) .................................................................................................................. 5

*Brown v. Cara*,
420 F.3d 148 (2d Cir. 2005) ......................................................................................................... 12

*Burke v. Dowling*,
944 F. Supp. 1036 (E.D.N.Y. 1995) ............................................................................................. 15

*Care Travel Co., Ltd. v. Pan American World Airways, Inc.*,
944 F.2d 983 (2d Cir. 1991) ......................................................................................................... 14

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) ........................................................................................................... 8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991) ............................................................................................................. 8

*Cosmas v. Hassett*,
886 F.2d 8 (2d Cir. 1989) ............................................................................................................... 8

*Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*,
375 F.3d 168 (2d Cir. 2004) ...............................................................................................*passim*

## TABLE OF AUTHORITIES
### (cont'd)

*Facit, Inc. v. Krueger, Inc.*,
732 F. Supp. 1267 (S.D.N.Y. 1990) ...................................................................24

*Gibbs-Alfano v. Burton*,
281 F.3d 12 (2d Cir. 2002) ...............................................................................24

*Glidepath Holding B.V. v. Spherion Corp.*,
No. 04 Civ. 9758 (KMK), 2007 WL 2176072 (S.D.N.Y. July 26, 2007) ......................6

*Goldman v. Belden*,
754 F.2d 1059 (2d Cir. 1985) ..............................................................................8

*In re Alstom S.A. Sec. Litig.*,
454 F. Supp. 2d 187 (S.D.N.Y. 2006) ....................................................................6

*Kramer v. Time Warner, Inc.*,
937 F.2d 767 (2d Cir. 1991) ................................................................................8

*Madonna v. U.S.*, 878 F.2d 62 (2d Cir. 1989) ..........................................................8

*Matterhorn Group, Inc. v. SMH (U.S.), Inc. (In re Matterhorn Group, Inc.)*,
No. 97-8273 (SMB), 2002 Bankr. LEXIS 1275 (Bankr. S.D.N.Y. Nov. 15, 2002) .....................14

*McKinley Allsopp, Inc. v. Jetbourne Int'l, Inc.*,
No. 89 Civ. 1489 (PNL), 1990 U.S. Dist. LEXIS 12405 (S.D.N.Y. Sept. 14, 1990).............. 14, 22

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
716 F. Supp. 1504 (S.D.N.Y. 1989) .....................................................................12

*NAS Electronics, Inc. v. Transtech Electronics PTE, Ltd.*,
262 F. Supp. 2d 134 (S.D.N.Y. 2003) ...................................................................21

*Neitzke v. Williams*,
490 U.S. 319 (1989) ...........................................................................................9

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007) ................................................................................8

*Rothman v. Gregor*,
220 F.3d 81 (2d Cir. 2000) ..................................................................................8

*S.A. Carmeuse v. M.J. Stavola Indus., Inc.*,
823 F. Supp. 125 (S.D.N.Y. 1993) ..................................................................23, 24

*Schiavone Constr. Co., Inc. v. County of Nassau*,
717 F.2d 747 (2d Cir. 1983) ...............................................................................24

*S & K Sales Co. v. Nike, Inc.*,
816 F.2d 843 (2d Cir. 1987) ...............................................................................14

## TABLE OF AUTHORITIES
(cont'd)

*Teachers Ins. and Annuity Ass'n of America v. Tribune Co.*,
670 F. Supp 491 (S.D.N.Y. 1987) ................................................................................18

*Terry v. Unum Life Ins. Co.*,
394 F.3d 108 (2d Cir. 2005) ........................................................................................6

*The Limited, Inc. v. McCrory Corp.*,
683 F. Supp. 387 (S.D.N.Y. 1988) ..............................................................................15

*Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*,
487 F.3d 89 (2d Cir. 2007) ...............................................................................9, 10, 12

*Winston v. Mediafare Entm't Corp.*,
777 F.2d 78 (2d Cir. 1986) ...............................................................................*passim*

## STATE CASES

*Danka Office Imaging Co. v. General Bus. Supply, Inc.*,
303 A.D.2d 883 (3d Dept. 2003) ................................................................................18

*Fabcon East, L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.*,
10 Misc. 3d 1066(A) (N.Y. Sup. 2005) ........................................................................12

*Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d 366 (1992) ...................................14, 15

*J.R. Loftus, Inc. v. White*, 85 N.Y.2d 874 (1995) ................................................................22, 23

## FEDERAL STATUTES AND RULES

15 U.S.C. § 7001(a) ................................................................................................20

22 U.S.C. § 288 ......................................................................................................2

Fed. R. Civ. P. 8(a)(2) ..............................................................................................5

Fed. R. Civ. P. 12(b)(6) .............................................................................................1

## STATE STATUTES

N.Y. Gen. Oblig. Law § 5-701 (McKinney 2002) ................................................................19, 20

U.C.C. § 2-201(1) ...................................................................................................19

**TABLE OF AUTHORITIES**
(cont'd)

TREATISES

24 Richard A. Lord, Williston on Contracts § 64:2 (4th ed. 1990)...............................................23

## INTRODUCTION

Defendant's motion seeks dismissal of Counts One, Two, and Four of the Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's motion fails *ab initio* because it requires the Court to ignore the proper standard of review. Indeed, far from assuming all factual allegations in the Complaint are true and drawing all inferences in the light most favorable to International Finance Corporation ("IFC"),[1] Defendant's motion is replete with factual allegations and misstatements contrary to those made in the Complaint. As such, IFC's claims cannot be dismissed as a matter of law.

More specifically, Defendant's arguments seeking to dismiss the first cause of action, alleging breach of the implied covenant of good faith and fair dealing, fail because the Complaint alleges facts sufficient to plead this cause of action, and because Defendant's arguments rest on the flawed factual assumption that this cause of action is premised on the termination of the Letter of Intent ("LoI") between the parties. Defendant's argument seeking to dismiss the second cause of action, alleging breach of a contract formed between the parties in June 2005, fails because it depends on the flawed factual assumption that this cause of action rests on interpretation of a Term Sheet as a contract, despite the fact that the Complaint makes no such allegation. Defendant's argument seeking to dismiss the fourth cause of action for indemnity is unsupported by law at best, and, in any event, demonstrates that the Court cannot dismiss this claim as a matter of law. Finally, IFC notes that Defendant concedes liability on IFC's third cause of action, as well as the entire amount IFC seeks under that cause of action. Consequently, Defendant's motion to dismiss should be denied.

---

[1] IFC brought this action in its capacity as Trustee for the IFC-Netherlands Carbon Facility ("INCaF"). Compl. at ¶ 9. Throughout this brief, "IFC" is used as shorthand to refer to IFC solely in that capacity.

## FACTUAL BACKGROUND

Plaintiff IFC is an independent member of the World Bank Group and an international organization within the meaning of the International Organizations Immunities Act, 22 U.S.C. § 288, *et seq*. IFC membership is comprised of 179 member countries. Compl. at ¶ 8.

Defendant owns a project, located in Khorat, Thailand, designed to recover methane and convert waste to energy, and which is expected to generate methane and carbon dioxide emission reductions. Compl. at ¶ 13. In early 2002, after learning of Defendant's project through EcoSecurities Group plc., which was acting as an agent to Defendant, IFC began discussions with Defendant about purchasing Certified Emission Reductions ("CERs") expected to be generated by the project. Compl. at ¶ 14. IFC sought to obtain CERs on behalf of the Netherlands, to permit that country to meet their goals under the Kyoto Protocol, an international treaty committing the signatory nations to take steps to improve the earth's environment.

In May 2004, IFC and Defendant executed the Letter of Intent ("LoI") for the purpose of entering into an Emission Reduction Purchase Agreement ("ERPA") for the purchase of Defendant's CERs by the Netherlands. Compl. at ¶ 15. The LoI anticipates a sale of two to two-and-a-half million CERs at EUR 3 per CER for the period ending December 31, 2012. *Id.* The LoI contains an exclusivity clause stating that INCaF's and IFC's rights of purchase "shall be prior to the rights of any other party to acquire Emission Reductions generated from [Korat's] Project." *Id.* Despite this exclusivity clause, Defendant has admitted negotiating with other third-party purchasers during the life of the LoI, a violation of the LoI's exclusivity provisions. Compl. at ¶¶ 16-17. Throughout the negotiations, Defendant used the LoI as a put option to protect itself against regulatory risks and price fluctuations. Compl. at ¶¶ 16-17 & Ex. C.

Through a series of e-mails and other communications in May and June 2005, the parties formed a contract for the sale of CERs.  On May 26, 2005, Defendant proposed the terms, including sale of one and one-half million CERs to IFC for a price of EUR 4.75.  Compl. at ¶ 18 & Ex. D.  Defendant also insisted that it would not accept financial liability for failure to deliver CERs in any given year.  Compl. at ¶ 18 & Ex. D.  Defendant stated that "[i]f these terms are broadly acceptable to IFC, we are now prepared to move quickly to finalize an updated Term Sheet which reflects them, and proceed with the completion of the balance of the purchase and sale documentation.  Look forward to moving ahead promptly." Id.  After further negotiations as to price and quantity, in June 2005, IFC and Defendant agreed on a price/quantity combination of EUR 4.25 for one and three-quarter million CERs,[2] along with Defendant's other terms.  Compl. at ¶ 18.  IFC subsequently sent Defendant a draft ERPA, reflecting the agreed terms, which the parties expected to complete by the end of 2005.  Compl. at ¶ 19.

Despite the June 2005 agreement and other representations, Defendant repeatedly delayed and avoided completing the final documentation.  IFC made numerous efforts to finalize the agreement, including retaining English counsel at considerable expense to review the ERPA.  Compl. at ¶¶ 20-25.   Meanwhile, the price of CERs rose, giving Defendant incentive to avoid completing the ERPA.  Compl. at ¶ 22.  Defendant continued its delay and in July 2006 requested that IFC consider a further price increase, admitting that it was really only interested in renegotiating the price.  Compl. at ¶ 26 & Ex. E-F.  Later, after Defendant informed IFC that it did not wish to incur additional legal expenses, IFC discussed revised terms during a meeting with Defendant's representatives in October 2006, including a higher price; an advance of Defendant's legal expenses that IFC would recoup only if the ERPA were executed; an

---

[2] In the Complaint at ¶ 18 in the third line from the bottom of that paragraph, a typographical error indicates the price ultimately agreed upon is "EUR 4.75".  The correct amount, EUR 4.25, is reflected in Exhibit D (the middle email in the string, by Ken Locklin, dated June 10, 2005, 12:24 p.m.), the email which ¶ 18 references.

agreement to purchase additional CERs post-2012, even though there is no market for them; assistance in obtaining approval from the Thai government; and assistance with the sale of verified emission reductions if Defendant's project was not registered in time to qualify for CERs generated prior to registration. Compl. at ¶ 26.

In October 2006, Defendant informed IFC that potential CER buyers were approaching Defendant with "attractive offers," which it was taking under consideration. Compl. at ¶¶ 28-29. This was an admission that Defendant had violated the exclusive dealing provision—Paragraph 5 of the LoI. Compl. at ¶¶ 15, 28, Ex. B. In response, IFC sent Defendant an email in November 2006 expressing a willingness to go forward with a new proposal and indicating that the LoI did not allow Defendant to "treat IFC/INCaF as a put option" and "continue to defer signing the ERPA to gauge how the market plays out." Compl. ¶ 28 & Ex. B. Despite repeated requests and deadlines, Defendant never provided a substantive response to the enhanced terms described in the November 2006 email, even while it continued negotiating with third parties in violation of the LoI. Compl. ¶ 29 & Ex. B.

On or about February 8, 2007, the Thai government approved Defendant's project, clearing the way for registration of the project with the United Nations Framework Convention on Climate Change. Compl. at ¶ 30. Having achieved this goal with the credibility of IFC's involvement, Defendant then apparently decided it had no more use for IFC. Shortly thereafter, on March 2, 2007, Defendant sent IFC a notice purportedly terminating the LoI as of March 17, 2007. *Id.* IFC responded by letter on March 14, 2007, stating that the termination notice was invalid and requesting that Defendant complete the transaction in good faith. Compl. at ¶ 32.

On or about March 29, 2007, Defendant requested registration of its project, with the Executive Board of the United Nations Framework Convention on Climate Change. Compl. at ¶

33.  The parties had subsequent communications, but Defendant refused to meet with IFC in a timely manner to discuss their dispute. Compl. at ¶ 34. Defendant also refused to name IFC as an additional Project Participant, despite IFC's request. *Id.*

As a direct and proximate result of Defendant's acts and omissions, including Defendant's breach of the LoI, breach of the June 2005 agreement, and breach of the covenant of good faith and fair dealing implied in the LoI, IFC has incurred substantial monetary damages. Compl. at ¶ 35. Defendant's deliberate bad-faith delays in the negotiations, improper dealings with third parties, and refusal to abide by the agreement reached between the parties in June 2005 have caused IFC to suffer substantial losses, given that the market price of CERs has risen considerably during the course of Defendant's delay tactics.

## ARGUMENT

### I.    DEFENDANT HAS IGNORED THE PROPER STANDARD OF REVIEW

Defendant fails to apply the appropriate standard of review to its motion, choosing instead to make competing factual allegations and inferences against IFC. Defendant's motion must be denied for this reason alone.

### A.    The Standard Of Review On A Motion To Dismiss Requires That All Factual Allegations In The Complaint And Inferences Favorable To IFC Be Accepted As True

The only requirement of a well-pleaded complaint is that it contains "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give Defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, --- U.S. ---, 127 S. Ct. 1955, 1964 (2007) (internal citations and quotations omitted); Fed R. Civ. P. 8(a)(2). This standard, to which there is only fleeting reference in Defendant's motion, requires the Court to accept all the allegations in the Complaint as true, construe them in

the light most favorable to IFC, and draw all inferences in IFC's favor. *Eternity Global Master Fund Ltd. v. Morgan Guaranty Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004); *see also Terry v. Unum Life Ins. Co.*, 394 F.3d 108, 109 (2d Cir. 2005). Defendant's interpretation of facts and documents may not be given any weight whatsoever. *Glidepath Holding B.V. v. Spherion Corp.*, No. 04 Civ. 9758 (KMK), 2007 WL 2176072 at *20 (S.D.N.Y. July 26, 2007) ("Defendant's interpretation of the . . . element [of a cause of action] as applied to these facts is not an issue for this motion"); *In re Alstom S.A. Sec. Litig.*, 454 F. Supp. 2d 187, 207 (S.D.N.Y. 2006) (defendant's "theory is sustainable only if the facts asserted in the [complaint] are read in light most favorable to these defendants, which is not the applicable standard at the motion to dismiss stage").

**B.    Defendant's Motion Is Premised On Its Own Interpretation Of The Facts Surrounding The Allegations In The Complaint, And Must Therefore Be Denied**

Defendant invites the Court to ignore the well-settled standard for reviewing motions to dismiss a complaint. Remarkably, Defendant asks the Court to affirmatively *reject* the allegations in the Complaint, Def. Br. at 5, which turns well-settled precedent from the Supreme Court, this Court, and all other federal courts, on its head. Defendant's motion is replete with its own factual allegations and its interpretation of the LoI and agreement between the parties, which it must make in order to be able to argue IFC has failed to state a claim. Examples of this abound:

- "The true facts demonstrate that IFC, not KWTE, was intransigent and heavy-handed throughout the negotiations." Def. Br. at 2. Defendant does not cite to the Complaint for this allegation, because it cannot; no such allegation is made in the Complaint, and it cannot be inferred from any allegations in the Complaint.

- "IFC began with an LoI that was one-sided in assessing a termination fee against KWTE for termination, but which allowed IFC to walk away at no cost." Def. Br. at 2. Again, no citation to the Complaint is or could be made. Indeed, as

discovery in this case will reveal, IFC offered to lower the termination fee without seeking any concession in return, but due to KWTE's own conduct in failing to execute the amendment removing the fee, the fee now remains in the LoI.

- "IFC insisted on price terms that did not come close to recognizing the market value of KWTE's CERs, and refused through the very end to drop its demand that KWTE agree to a commercially irresponsible contract." Def. Br. at 2. Even a loose reading of the Complaint leads to the opposite conclusion, and Defendant offers no citation to the Complaint for this assertion.

- "On numerous other issues, such as penalties to be assessed against KWTE for non-delivery of CERs and KWTE's right to sell additional CERs to third parties, IFC simply refused to negotiate." Def. Br. at 2. Defendant asserts this "fact" without any citation to the Complaint. This allegation, much like Defendant's other allegations, is flat wrong and will be refuted at trial. Indeed, as Exhibit D, attached to the Complaint, demonstrates, it was Defendant who dictated the bulk of the terms of the June 2005 agreement.

- "[A]s IFC's own attached documents demonstrate, KWTE continued to actively negotiate potential terms with IFC throughout the life of the LoI." Def. Br. at 2. This is an unsupported inference in favor of Defendant. If this assertion demonstrates anything, it is that a serious factual dispute exists as to the allegations made in the Complaint—which alleges precisely the opposite—that cannot be resolved on a motion to dismiss.

- "IFC's characterization of the May-June e-mails is simply wrong." Def. Br. at 9. This too demonstrates that Defendant's motion is ill-conceived because of the undeniable factual disputes that prevent this Court from determining that *as a matter of law* IFC has failed to state a claim.

- "This allegation of a new offer in October 2006 is inconsistent with the notion that a binding agreement was reached in June 10." Def. Br. at 13-14. Defendant puts its own spin on the facts in the Complaint to support its argument that no agreement was reached, yet this underscores that the question of the parties' intent to form a contract is a factual determination. At this stage, all factual issues must be resolved in IFC's favor.

These are but a few examples, and many more can be found throughout Defendant's brief at pages 9-14.

In an attempt to justify reliance on facts and inferences not found in the Complaint and unfavorable to IFC, Defendant asserts that the Court may ignore allegations in the Complaint if they are contradicted by materials attached to the Complaint or incorporated by reference. The

law of this Circuit, however, is much narrower, namely: "a document [not attached to the complaint nor incorporated by reference] upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on" a motion to dismiss. *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original). The Court further held that "this principle has its greatest applicability in cases alleging fraud." *Id.* (reversing dismissal of a non-fraud cause of action) (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991) and *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). The Second Circuit has further held that when a "complaint merely discussed [] documents [not attached to the complaint] and presented short quotations from them," such documents are not deemed to be incorporated into the complaint by reference; "[l]imited quotation does not constitute incorporation by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1066 (2d Cir. 1985)) (internal quotations omitted). Defendant's citations to *Cosmas* and *Cortec* vastly misrepresent what those cases held; in any event, Defendant's expansive interpretation of the holdings in *Cosmas* and *Cortec* was rejected by the Second Circuit in both *Roth* and *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).[3]

In this case, none of IFC's claims sound in fraud. Thus the doctrine is inapplicable. Moreover, the LoI is the only document upon which IFC relies that is *integral to the Complaint*, and only as to Counts One, Three, and Four. Further, the fleeting reference to the Term Sheet in

---

[3] The remainder of Defendant's cases are likewise inapplicable. *See, e.g.*, *Madonna v. U.S.*, 878 F.2d 62, 65 (2d Cir. 1989) (complaint filed by convicted heroin dealer alleging fraud was dismissed for failure to meet the heightened pleading requirements of Fed. R. Civ. P. 9(b)); *Alusit Ltd. v. Aluglas of Pa.*, No. 89 Civ. 3849 (CSH), 1990 U.S. Dist. LEXIS 16755 (S.D.N.Y. Dec. 4, 1990) (complaint failed to allege whether plaintiff was party to the agreement under which it brought suit; court referenced agreement attached to complaint to determine if plaintiff was a party); *Rothman v. Gregor*, 220 F.3d 81, 89 (2d Cir. 2000) (heightened pleading standards under federal statute applied to securities fraud case); *Kramer*, 937 F.2d at 774 (in case alleging fraud, court may take judicial notice of documents filed with the Securities and Exchange Commission).

the Complaint does not render that document incorporated by reference, nor render that document integral to the Complaint. Thus, the Term Sheet and Defendant's interpretation of it may not be used as a basis for ignoring the allegations in the Complaint.

Defendant in fact argues its motion to dismiss as if it were one for summary judgment, assuming its own version of the facts is undisputed, but without the necessary antecedent of discovery to support the facts to which it alludes in its motion. As noted above, this ignores the well-settled rule that on a motion to dismiss, a defendant may prevail only if, accepting all factual allegations in the complaint as true and making all inferences in favor of IFC, IFC cannot, *as a matter of law*, under any set of facts that could be proved consistent with the allegations, state a claim. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989). As discussed below, Defendant has failed to meet its burden of showing that, as a matter of law, IFC cannot proceed on its claims.

## II.    IFC HAS STATED A CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Under New York law, the covenant of good faith and fair dealing is implicit in all contracts. *See, e.g., Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 98 (2d Cir. 2007). The covenant is intended to ensure that neither party does anything "which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* To state a claim for a breach of this covenant, IFC must allege only that (1) an agreement existed, and (2) Defendant's conduct had the effect of destroying or injuring IFC's right to receive the fruits of that agreement. *Id.; ARI and Co., Inc. v. Regent Int'l Corp.*, 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003). In other words, Defendant's conduct "breach[ed] [] the reasonable expectations and inferences otherwise derived from the agreement." *Id.* The Second Circuit has held that analysis of this cause of action is necessarily highly fact-dependant:

In determining whether a party has breached the obligation or covenant of good faith and fair dealing, a court must examine not only the express language of the parties' contract, but also any course of performance or course of dealing that may exist between the parties. Thus, whether particular conduct violates or is consistent with the duty of good faith and fair dealing necessarily *depends upon the facts of the particular case, and is ordinarily a question of fact to be determined by the jury or other finder of fact.*

487 F.3d at 98 (internal citations and quotations omitted) (emphasis added).

The Complaint alleges facts that are more than sufficient to establish this cause of action. Moreover, given the fact-dependant nature of this claim, Defendant's challenge is particularly inappropriate in the context of a motion to dismiss.

A.    **IFC Has Alleged Facts Sufficient To Demonstrate That Defendant Did Not Act In Good Faith In Performing Under The LoI, Thereby Injuring IFC's Right To The Fruits Of That Agreement**

IFC's cause of action for breach of the covenant of good faith and fair dealing is premised on the LoI. Compl. at ¶¶ 39-45. The LoI established an agreement between the parties to negotiate in good faith towards the formation and execution of an ERPA. IFC continually strived towards that goal, making necessary concessions in order to accommodate Defendant's goals and needs to reach agreement on a final ERPA. Defendant, however, improperly used the LoI as a put option to gain additional credibility with the Thai government in order to overcome regulatory hurdles, and to ensure a guaranteed price in case the market price for CERs went down. Compl. at ¶ 17. Defendant delayed the process on numerous occasions without good reason, and during those delays, the market price in fact rose. *See* Compl. at ¶¶ 20-21, 23-24, 29.

Despite having reached a binding agreement as to all material terms, *see* Section III. below, Defendant refused to negotiate to create an ERPA from that agreement.[4] Compl. at ¶ 20. Defendant refused to provide detailed, substantive comments on specific issues it claimed it had

---

[4] IFC can state an additional cause of action for breach of the implied covenant of good faith and fair dealing related to Defendant's bad faith in refusing to finalize and execute the June 2005 binding preliminary agreement between the parties.

with the proposed ERPA, instead offering only incoherent "policy concerns" for why it was rejecting the ERPA as a whole. *Id.* Defendant attempted to force upon IFC additional terms *never before raised or discussed*, and, more importantly, that were above and beyond the customary market terms for such agreements. *Id.* Defendant instead insisted that the whole ERPA be completely redrawn, with no justifiable basis for doing so. Compl. at ¶ 24. IFC sought, at great expense, to redraw the ERPA to attempt to meet Defendant's demands, but even after having done so, *Defendant never provided any comments on the redrafted ERPA.* Compl. at ¶¶ 25, 29.

As further evidence of its breach of the covenant of good faith and fair dealing, Defendant *admitted violating* the LoI's clear and unequivocal exclusivity clause. That clause gave IFC first right to CERs produced by Defendant's project. Compl. at ¶ 29. Nevertheless, Defendant was receiving, considering and discussing offers from third parties. *Id.*

As the Complaint details, throughout the parties' relationship, Defendant has benefited substantially. Defendant used IFC to boost its credibility with the Thai government to obtain regulatory approvals and ensure it received a guaranteed base price for its CERs if the market turned bad. Conversely, IFC has been injured substantially. As a result of Defendant's bad behavior and unjustifiable delays, IFC will now likely have to pay at least triple what it originally expected to have to pay for CERs because the market price for CERs has substantially increased.

Defendant now claims that IFC sought to force Defendant to "agree to a commercially irresponsible contract." Def. Br. at 2. This only demonstrates Defendant was trying to have it both ways – stall to see if the market price increased, and when it did, complain that the agreement to which it previously agreed was "commercially irresponsible." This is precisely the

bad behavior courts have sought to protect against when the implied covenant for good faith and fair dealing was recognized and applied to all contracts. *See, e.g., Fabcon East, L.L.C. v. Steiner Bldg. Co. NYC, L.L.C.*, 10 Misc. 3d 1066(A), *14 (N.Y. Sup. 2005) (finding defendant's failure to negotiate constituted breach of covenant of good faith and fair dealing). As the Complaint details, there is ample evidence and factual allegations demonstrating (1) an agreement (the LoI), and (2) specific bad-faith conduct on Defendant's part which directly caused harm to IFC's interests and its right to receive the fruits of the LoI. That is all that is required to plead this cause of action and defeat a motion to dismiss. *Tractebel Energy Mktg.*, 487 F.3d at 98.

### B. Defendant's Arguments Regarding IFC's Claim For The Breach Of The Covenant Of Good Faith And Fair Dealing Are Unavailing

Defendant seeks to have this Court dismiss IFC's claim for breach of the covenant of good faith and fair dealing by alleging that the covenant adds new terms to the LoI or is otherwise inconsistent with the LoI. Defendant also argues that the covenant of good faith and fair dealing does not apply to a party's right to terminate an agreement through a termination clause such as the one found in the LoI. Defendant's arguments fail because they are premised on the theory that IFC is basing its claim for breach of this covenant on Defendant's termination of the LoI. A fair reading of the Complaint clearly demonstrates that is not the case.

Defendant is correct in pointing out that courts will not apply an implied covenant of good faith and fair dealing where doing so will add new terms to an agreement, or otherwise alter the agreement in a way the parties did not intend. *See, e.g., Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 716 F. Supp. 1504, 1519 (S.D.N.Y. 1989). However, Defendant does not point to any "new" terms which IFC is attempting to read into the LoI. In fact, courts have specifically recognized the existence of the covenant of good faith and fair dealing in agreements to negotiate. *See, e.g., Brown v. Cara*, 420 F.3d 148, 153 (2d Cir. 2005). Seeking to redefine IFC's

claim, Defendant also argues that IFC is trying to read a good-faith requirement into the termination clause of the LoI. The Complaint does not support this assertion and, in fact, Defendant does not cite to the Complaint. As discussed above in Section II.A., IFC's good faith and fair dealing claim is not based on the termination of the LoI, but on a pattern of conduct over the course of years in which Defendant would agree to price and quantity terms and then continually renegotiate them to the detriment of IFC, as well as improperly negotiating with third parties, while it sought to use its association with IFC to gain certain approvals from the Thai government. Compl. at ¶¶ 6, 16-18, 20-22, 26, 29-31. All of these bad acts occurred well before the termination of the LoI. Indeed, the most egregious examples of Defendant's bad faith – its refusal to cooperate in memorializing the binding agreement *which it proposed*, Compl. at ¶¶ 18-20, and its violation of the LoI's exclusivity clause, Compl. at ¶ 29 – occurred many months before Defendant's purported termination. While the timing of Defendant's attempt to terminate the LoI is further evidence of Defendant's overall bad faith, this cause of action is simply not based on just this one action by Defendant.

Moreover, the authorities Defendant cites are employment cases that are inapplicable. *See* Def. Br. at 15-16. IFC does not contend it had an employment relationship with Defendant or seek to rewrite the at-will employment doctrine. This is not an employment case and termination is not the sole issue. Thus, even should this line of cases be applied here, IFC has still stated a claim for breach of the covenant of good faith and fair dealing as a matter of law. Accordingly, Defendant's motion to dismiss this claim must be denied.

### C.    IFC May Seek Expectation Damages For Defendant's Breach Of The Covenant Of Good Faith And Fair Dealing

Although not necessary in a complaint, IFC has also stated a claim for expectation damages for the implied covenant of good faith and fair dealing. Defendant relies on promissory

estoppel and lost profit cases to make the exaggerated assertion that a plaintiff can never recover expectation damages for a breach of the implied covenant of good faith and fair dealing. Def. Br. at 17-19. Yet the cases on which Defendant relies merely show, at stages well beyond the motion to dismiss, that particular plaintiffs could not *prove* the elements necessary for expectation damages—not that such damages are categorically foreclosed. *See McKinley Allsopp, Inc. v. Jetbourne Int'l, Inc.*, No. 89 Civ. 1489 (PNL), 1990 U.S. Dist. LEXIS 12405, at *24 (S.D.N.Y. Sept. 14, 1990) (after trial, "[o]n the evidence presented" the Plaintiff "has not demonstrated with the required certainty" an entitlement to lost profits); *Matterhorn Group, Inc. v. SMH (U.S.) Inc. (In re Matterhorn Group, Inc.)*, No. 97-8273 (SMB), 2002 Bankr. LEXIS 1275, at *52 (Bankr. S.D.N.Y. Nov. 15, 2002) (same).

Contrary to Defendant's suggestion, the Second Circuit has allowed recovery of lost profits when plaintiff has met the standard of recovery for damages. *See, e.g., Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983, 994 (2d Cir. 1991) (defendant's "assertion that the proof of any lost profits was purely speculative. . . is belied by the evidence") (citing *S & K Sales Co. v. Nike, Inc.*, 816 F.2d 843, 852 (2d Cir. 1987)). In attempting to argue otherwise, Defendant cites to dicta in a footnote in *Arcadian Phosphates, Inc. v. Arcadian Corp.*, a Second Circuit promissory estoppel case noting that a district court "*may* decide" on a remedy other than expectation damages because lost profits "*may* be speculative." 884 F.2d 69, 74 n.2 (2d Cir. 1989) (emphasis added). *Arcadian Phosphates* does not categorically hold, however, that a Plaintiff cannot recover expectation damages for a breach of the implied covenant of good faith and fair dealing. Whether IFC can prove expectation damages with the necessary certainty is an inquiry reserved for a later stage in the proceedings. *See Arcadian Phosphates*, 884 F.2d at 70 (appeal from summary judgment); *Goodstein Constr. Corp. v. City of New York*, 80 N.Y.2d

366, 368, 371 (1992) (same, and noting that plaintiff's "causes of action are sufficiently pleaded" and reliance damages might be warranted at trial).

Moreover, Defendant's objection to how IFC calculated its damages is premature at this stage. Defendant confuses the *fact* of damages—the pleading requirement—with the *amount* of damages—which must be proven at trial. To overcome a motion to dismiss, IFC "need not establish that [it] can obtain the precise relief [sought] to survive this motion [to dismiss], so long as [it] can demonstrate that [it is] entitled to some relief." *Burke v. Dowling*, 944 F. Supp. 1036, 1052 (E.D.N.Y. 1995) (citing *The Limited, Inc. v. McCrory Corp.*, 683 F. Supp. 387, 393 (S.D.N.Y. 1988)). IFC has properly included a prayer for relief on all counts. *See* Compl. at 16-17, Parts A-F. Thus, Defendant's argument fails here too.

## III.    IFC HAS STATED A CLAIM FOR BREACH OF CONTRACT

A claim for breach of contract requires only allegations that (1) an agreement existed; (2) IFC adequately performed on the agreement; (3) Defendant breached the agreement; and (4) IFC suffered damages as a result of Defendant's breach. *Eternity Global Master Fund*, 375 F.3d at 177. As set forth below, the Complaint adequately alleges each of these elements. Defendant's arguments—which rest on the faulty factual premise that IFC alleges the Term Sheet is the agreement—thus fail.

### A.    The Complaint Alleges That A Binding Agreement Existed Between The Parties

As alleged in paragraphs 18-20 and 47 of the Complaint, in June 2005 IFC and Defendant reached an agreement as to the material terms of price and quantity for the sale of Defendant's CERs, along with the various other terms upon which Defendant insisted. It is hornbook New York law that "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document . . . [and] the mere intention to commit the agreement to

writing will not prevent contract formation prior to execution." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1986).

The agreement IFC alleges was reached between the parties in June 2005 is a preliminary agreement intended to be reduced to a more formal writing.[5]   Whether such an agreement is enforceable as a contract is a question of fact.   To determine whether such an agreement is enforceable, the Court must first determine the type of agreement that was reached between the parties.   As the Second Circuit has noted, there are two types of preliminary agreements: (a) one in which the parties "have reached complete agreement on all of the issues that require negotiation, but they have not yet completely formalized their agreement," and (b) one in which the parties "have committed themselves to some major terms, but some terms will remain to be negotiated;" this second type of agreement can be as binding "in the sense that [the parties] accept a mutual commitment to negotiate together in good faith in an effort to reach final agreement within the scope that has been settled in the preliminary agreement." *Arcadian Phosphates*, 884 F.2d at 72.   The first type of preliminary agreement requires the application of the four factors enumerated by the Second Circuit in *Winston*, 777 F.2d at 80, whereas the second type of preliminary agreement requires the application of a modified version of the *Winston* factors enumerated in *Arcadian Phosphates*, 884 F.2d at 72.   Regardless of whether the June 2005 agreement is considered a *Winston*-type agreement or an *Arcadian Phosphates*-type agreement, IFC has stated a claim for breach of that agreement.

---

[5] As is discussed further below, the email itself constitutes a writing, and thus the agreement had already been reduced to writing—i.e., this was not an oral agreement.

1.    **Application Of The *Winston* Factors To IFC's Breach Of Contract Claim Demonstrates That IFC Has Stated A Claim**

The June 2005 agreement between the parties, evidenced in part through the May-June email correspondence attached to the Complaint as Exhibit D, contained all of the major terms of importance to Defendant. Those terms were specified in detail in the May 26, 2005, email constituting the original offer. The agreement concerned the sale of CERs, a fungible commodity. For such contracts, the key terms are always price, quantity, and delivery terms. *Apex Oil Co. v. Vanguard Oil & Service Co. Inc.*, 760 F.2d 417, 423 (2d Cir. 1985). When IFC counter-offered with a higher quantity and lower price, accepting all of Defendant's remaining terms, Defendant accepted those terms, as evidenced in the May-June email correspondence and other communications between the parties.[6] Because Defendant established (through its May 26, 2005, email) the universe of terms it felt required negotiation, and because agreement was reached between the parties on all those terms, IFC has alleged sufficient facts that the parties "have reached complete agreement on all of the issues that require negotiation, but they have not yet completely formalized their agreement," *Arcadian Phosphates*, 884 F.2d at 72, requiring application of the *Winston* factors to determine whether the agreement is binding.

Under *Winston*, the Court must conduct a balancing test of four issues of fact to determine whether the parties intended to be bound by a preliminary agreement. The Court articulated the following factors to balance: (1) the existence of an express reservation not to be bound absent a writing; (2) the partial performance on the contract by either party; (3) agreement on all of the terms of the contract; and (4) whether the agreement is of the type normally

---

[6] Even if IFC's June 10 email could be viewed as a "counter-offer" as Defendant argues, IFC has never contended that this string of emails is the whole universe of communications between the parties evidencing the June 2005 agreement. Because all inferences must be drawn in IFC's favor, any alleged ambiguities in this email string must be resolved in IFC's favor.

committed to writing. *Winston*, 777 F.2d at 80. In balancing these factors, the Court must accept all the allegations in the Complaint as true and make all inferences in favor of IFC.

Regarding the first factor, it is clear that Defendant intended the June 2005 agreement to be binding.[7] Nowhere in the May-June 2005 email correspondence was there any express reservation by either party of the right not to be bound absent a formal written agreement.[8] While both sides indicate their expectation that a formal written agreement will be created and executed to memorialize this agreement, neither party clearly, unambiguously, and *expressly* reserved the right not to be bound prior to a formal written agreement. As noted above, "the mere intention to commit the agreement to writing will not prevent contract formation prior to execution." *Id.*

Defendant attempts to make much of the reservation not to be bound found in the Term Sheet. Even assuming that the Court could consider the Term Sheet at this point, which it cannot (*see* Section I.B., *infra*), this argument misses the point. Defendant's argument rests on the flawed factual assumption that the Term Sheet is the agreement breached. However, as noted in the Complaint, at ¶ 18-20, 47, IFC alleges that the contract formation occurred through the May-June 2005 email correspondence and other communications between the parties, *not* through the

---

[7] When looking at contract formation, "the court looks not to the parties' after-the-fact professed subjective intent, but rather at their objective intent as manifested by their expressed words and conduct at the time of the agreement." *Danka Office Imaging Co. v. General Bus. Supply, Inc.*, 303 A.D.2d 883, 884 (3d Dept. 2003). Thus, Defendant's protestations in its motion that there was no agreement cannot be given any weight.

[8] Although Defendant argues that language in the email correspondence indicates a reservation not to be bound absent approval by Defendant's Board, this language is insufficient to nullify the preliminary agreement: "[although] such reservations, considered alone, undoubtedly tend to indicate an intention not to be finally bound, they do not necessarily require that conclusion. Such terms are not to be considered in isolation, but in the context of the overall agreement. Such terms are by no means incompatible with intention to be bound." *Teachers Ins. and Annuity Ass'n of America v. Tribune Co.*, 670 F. Supp 491, 499-500 (S.D.N.Y. 1987). Additionally, in light of the fact that the terms of the preliminary agreement were eventually incorporated into the Term Sheet, Compl. at ¶ 19, an inference must be drawn that such approval was obtained, thus satisfying any possible condition precedent to the formation of a binding preliminary agreement. In any event, this ambiguity renders it impossible for the Court to decide Defendant's motion as a matter of law, as discovery would be necessary to further elucidate the meaning of this email and contemporary communications.

Term Sheet.  As noted in the Complaint at ¶ 19 (the Term Sheet "reflected the new price and quantity combination for CERs that IFC and Korat *had agreed to in June,*" emphasis added), the Term Sheet was merely further evidence of the agreement, and part of the process to formally memorialize that agreement, but not the agreement itself.  In any event, the intent of the parties at the time of formation is what controls.  *Winston*, 777 F.2d at 80 (the intent of the parties is determined at the time of contract formation).   Since the express reservation in the Term Sheet came *after* the June 2005 agreement (which contained no such reservation), Defendant cannot add such a condition where none existed at the time the agreement was formed.

Regarding the second *Winston* factor, IFC could not perform on the contract – i.e., pay Defendant for its CERs – if Defendant refused to tender them.  In fact, IFC was ready, willing, and able to perform on the contract, but was prevented from doing so – and thus excused from doing so – as a result of Defendant's breach.  *See* Section III.B. below.  As to the third *Winston* factor, the Complaint alleges that all terms had been agreed upon, through the May-June 2005 correspondence and other communications between the parties.   The detailed and carefully worded May 26, 2005, proposal by Defendant demonstrates that Defendant laid out all terms which it found critical to the formation of the agreement, and agreement was reached between the parties on all of those terms.

The fourth *Winston* factor also militates in favor of finding that the parties intended to be bound by the preliminary agreement.  Such an agreement, involving such a large transaction, is normally of the type committed to writing. U.C.C. § 2-201(1).  Emails are deemed to be writings for the purposes of contract formation.  *See* N.Y. Gen. Oblig. Law § 5-701 (McKinney 2002) (an "electronic communication . . . admissible in evidence under the laws of this state, sufficient to indicate that in such communication a contract was made between the parties" is sufficient to

meet the writing requirement); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 386-87 (S.D.N.Y. 2005); *see also* 15 U.S.C. § 7001(a). Thus the June 2005 preliminary agreement *has* been committed to writing by virtue of being communicated through email.

Casting the facts in the light most favorable to IFC, each of the four *Winston* factors weigh in favor of finding a binding preliminary agreement between the parties. Thus, the June 2005 preliminary agreement must, at this stage of the proceedings, be considered to be an enforceable contract.

> **2.      Application Of The *Arcadian Phosphates* Factors To IFC's Breach Of Contract Claim Demonstrates That IFC Has Stated A Claim**

Even if the Court determines that the parties "have committed themselves to some major terms, but some terms will remain to be negotiated," triggering application of the *Arcadian Phosphates* factors, 884 F.2d at 72, again the only conclusion that can be reached from the allegations in the Complaint is that a binding preliminary agreement existed between the parties, and both parties expressed a desire to move quickly to execute a formal document on the terms agreed upon.

Under *Arcadian Phosphates*, the Court determines the intent of the parties to be bound through consideration of "(1) the language of the agreement; (2) the context of the negotiations; (3) the existence of open terms; (4) partial performance; and (5) the necessity of putting the agreement in final form, as indicated by the customary form of such transactions." *Id.* The *Arcadian Phosphates* court noted that the first factor was most important, and this factor is essentially identical to the first *Winston* factor, in that an express reservation to be bound controls. *Id.* Thus, the first, fourth, and fifth *Arcadian Phosphates* factors are identical to the *Winston* factors, which are addressed above and will not be repeated here.

The context of the negotiations further demonstrates the parties' intent to be bound by the June 2005 agreement. The parties had entered into the LoI one year earlier, and IFC felt secure enough in the negotiations to incur the expense of performing the due diligence. The terms laid out in the May-June email correspondence were acceptable to, and accepted by, both parties.

Moreover, the existence of open terms, if any, does not undermine the enforceability of the June 2005 agreement. First, the email correspondence does not indicate any open terms that required further negotiation; only price and quantity remained to be resolved, and the new price/quantity combination was ultimately accepted by Defendant. Compl. at ¶¶ 6, 18-20, and Ex. D. Second, the fact that the parties failed to execute an ERPA does not demonstrate the existence of open terms. The reason for the failure to execute the ERPA is Defendant's bad faith in the negotiations to execute the ERPA, not the existence of open terms. Compl. at ¶ 20. Consequently, even under the *Arcadian Phosphates* factors, the Complaint alleges sufficient facts to establish the existence of a binding agreement between the parties.

**B.    IFC Was Prevented From Performing On The Agreement By Defendant's Breach**

IFC has sufficiently pled that it was ready, willing, and able to perform on the June 2005 agreement, but for Defendant's breach of that agreement. Because the June 2005 agreement entailed the sale of CERs by Defendant to IFC, IFC could not have performed under the June 2005 agreement once Defendant refused to honor it. Compl. at ¶¶ 18-19, 36-37, 47-50. Under New York law, the non-breaching party to an agreement is freed from its obligations under the agreement following the breach of that agreement, and may sue for damages following the breach. *Bear, Stearns Funding, Inc. v. Interface Group-Nevada, Inc.*, 361 F. Supp. 2d 283, 291 (S.D.N.Y. 2005); *NAS Electronics, Inc. v. Transtech Electronics PTE Ltd.*, 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003).

### C.     Defendant Breached The June 2005 Agreement

The Complaint unequivocally states that Defendant's breach of the June 2005 agreement is the breach upon which the third cause of action is based. Compl. at ¶¶ 47-48. This allegation states a claim for breach of contract. *Eternity Global Master Fund*, 375 F.3d at 177.

Defendant confuses the discussion by presuming that the agreement in question is the Term Sheet, which expressly reserves the right of the parties not to be bound *by the terms of the Term Sheet*. As noted above, there is no reservation by the parties not to be bound by the June 2005 agreement, and thus Defendant's refusal to abide by the terms agreed upon in June 2005 constitutes a breach of that agreement.

### D.     IFC Suffered Damages As A Result Of Defendant's Breach Of The Agreement

The Complaint unequivocally states that Defendant's breach of the June 2005 agreement caused IFCs' damages. Compl. at ¶ 50. Furthermore, these damages are enumerated at Part B of the Prayer for Relief. These allegations are sufficient to state a claim for breach of contract. *Eternity Global Master Fund*, 375 F.3d at 177.

Defendant alleges throughout its motion that the LoI's termination clause is the only recovery for Defendant's termination of the LoI. This, again, misses the point. In the second cause of action for breach of contract, IFC is not seeking damages for Defendant's termination of the LoI, but rather seeks damages from Defendant's breach of the *independent* agreement reached between the parties in June 2005, which is not governed by the LoI. Thus, IFC properly seeks expectation damages for breach of the June 2005 agreement. Defendant does not deny that expectation damages are the "normal measure of damages for breach of contract" in New York, as its own cited cases show; IFC has thus properly pleaded such damages on its breach of contract claim. *See McKinley Allsopp*, 1990 U.S. Dist. LEXIS 12405, at *22-*23; *J.R. Loftus,*

*Inc. v. White*, 85 N.Y.2d 874, 877 (1995); 24 Richard A. Lord, Williston on Contracts § 64:2 (4th ed. 1990) ("[C]ontract damages are ordinarily calculated based on protection of the disappointed promisee's expectation interest . . . .").[9]

## IV.    DEFENDANT HAS CONCEDED LIABILITY ON IFC'S ENTIRE CLAIM FOR TERMINATION PAYMENT

IFC's prayer for relief for Count Three (Claim in the Alternative for Termination Payments) — the only part of the Complaint that seeks relief for termination of the LoI — asks for "not less than $425,000" under the LoI for termination. Compl. at ¶ 17. Defendant concedes that it owes the "full termination fee" (Def. Mot. to Dismiss at 3) and acknowledges that the full fee is $425,000. Def. Br. at 19. Defendant has thus conceded that IFC has stated a claim for termination payments, as well as the amount of payments sought by IFC.

## V.    IFC HAS STATED A CLAIM FOR INDEMNIFICATION

IFC has properly pled indemnification under the LoI's indemnity clause. Compl. at ¶¶ 57-59. In those paragraphs, IFC sets forth the broad indemnification language set out in the LoI, explicates Defendant's obligations under that indemnification clause, alleges that the harm suffered by IFC as a result of Defendant's acts and omissions is covered under the indemnification clause, and seeks relief for the harm caused by Defendant.

Defendant improperly characterizes the LoI's indemnity clause as a "standard . . . third-party indemnity clause" not providing the basis for a first-party claim. Def. Br. at 21. It is a vast exaggeration of Second Circuit law (to which Defendant tellingly does not refer) to declare that an indemnity clause never provides the basis for a first-party claim. *S.A. Carmeuse v. M.J.*

---

[9] Defendant acknowledges that IFC could claim reliance damages for Defendant's conduct. Def. Br. at 19. It is thus undisputed that IFC has properly asserted a claim for reliance damages. Although Defendant argues that the LoI limits IFC's damages, in doing so Defendant relies on its flawed assumptions regarding the allegations in the Complaint, and thus Defendant's arguments do not undermine IFC pleadings.

*Stavola Indus. Inc.*, 823 F. Supp. 125, 130 n.14 (S.D.N.Y. 1993) (the "assertion that 'indemnification' always pertains to third-party liability is plainly an overstatement").

The indemnity clause in the LoI is broad, and encompasses "any losses, claims, damages, or liabilities" and "any expenses, including any legal expenses." Such broad language demonstrates that the parties intended a liberal concept of indemnity in the agreement.[10] Indeed, courts have refused to grant summary judgment on first-party claims based on indemnity clauses containing similarly broad language: "The more expansive language of [the indemnity clause], which extends coverage to all 'liabilities, losses, damages, deficiencies, costs or expenses,' rather than only covering liabilities, suggests that a broad concept of indemnity may have been intended." *S.A. Carmeuse*, 823 F. Supp. at 130; *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002) (allowing an expansive interpretation of an indemnity clause with broad language). Thus, IFC's claim for indemnification, which could defeat summary judgment, undoubtedly meets the lower threshold of a motion to dismiss, which merely requires that the complaint adequately states the claim.

Like its argument as to the other claims, Defendant's arguments as to the indemnity clause are not really legal arguments at all, but go to the facts suggesting the intent of the parties, and are thus not ripe for resolution at this stage in the proceedings. *See Facit, Inc. v. Krueger, Inc.*, 732 F. Supp. 1267, 1274-75 (S.D.N.Y. 1990) (citation omitted) (holding on a motion for summary judgment that the intent of the parties and the "circumstances surrounding the formation of the Agreement . . . are best determined at trial during which the credibility of witnesses can be observed and judged by the trier of fact"); *see also Schiavone Constr. Co., Inc. v. County of Nassau*, 717 F.2d 747, 751 (2d Cir. 1983).

---

[10] The full language of the indemnity clause, quoted in Defendant's Brief at 21-22, invites a liberal reading of the clause.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss the Complaint should be denied.

Dated:  September 7, 2007                    Respectfully submitted,

                                             **WHITE & CASE** LLP


                                             ____/s/_____
                                             Francis A. Vasquez, Jr. (FAV-1446)
                                             Maria N. Lerner (ML-2546)
                                             701 Thirteenth Street, N.W.
                                             Washington, D.C. 20005
                                             (202) 626-3600

                                             *Counsel for International Finance Corporation*