IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL FINANCE CORPORATION, not in its individual capacity, but solely as the Trustee for the IFC-Netherlands Carbon Facility,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KORAT WASTE TO ENERGY CO. LTD. (a/k/a Khorat Waste to Energy Co.),<br><br>　　　　Defendant. | 07 Civ. 5451 (SHS) |

**REPLY MEMORANDUM IN SUPPORT OF
KWTE'S MOTION TO DISMISS THE COMPLAINT**

Anthony F. King
WALLACE KING DOMIKE & REISKIN, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: 202.204.1000
Facsimile: 202.204.1001

Elkan Abramowitz (EA-3987)
Thomas M. Keane (TK-6320)
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C
565 Fifth Avenue
New York, NY 10017
Telephone: 212.880.9300
Facsimile: 212.856.9494

Attorneys for Defendant
Korat Waste to Energy Co., Ltd

September 21, 2007

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................ii

INTRODUCTION ................................................................................................................ 1

I. PLAINTIFFS' CLAIM ALLEGING LIABILITY FOR BREACH
OF COVENANT OF GOOD FAITH AND FAIR DEALING IS
INVALID AS A MATTER OF LAW ................................................................... 3

    A. Paragraph 7(b) Of The LOI Bars
       IFC's Implied Covenant Claim ................................................................. 3

    B. KWTE's Express Right To Terminate Negotiations
       Bars IFC's Proposed Implied Covenant To
       Negotiate In Good Faith Under New York Law ....................................... 4

II. IFC'S CLAIM FOR CONTRACT EXPECTATION DAMAGES
BASED ON THE ALLEGED BREACH OF AN IMPLIED
COVENANT IN A NON-BINDING LETTER OF INTENT
SHOULD BE DISMISSED .................................................................................. 5

    A. The LOI Bars Expectation Damages
       For An Alleged Breach Of The LOI ........................................................ 5

    B. In Any Event, New York Law Bars Expectation Damages For
       An Alleged Breach Of An Implied Covenant Of Good Faith
       Where There Is An Express Right To Terminate The Contract ................ 6

III. PLAINTIFF'S BREACH OF CONTRACT CLAIM IS INVALID
AS A MATTER OF LAW ..................................................................................... 6

    A. IFC Does Not, And Cannot, Identify Any Agreement
       Between The Parties As To Any Contract Terms ..................................... 6

    B. The Parties Expressly Agreed Not To Be Bound In Any
       Way Unless They Executed A Final Emission
       Reduction Purchase Agreement ................................................................ 8

IV. PLAINTIFF HAS REFUSED TO ACCEPT
THE LOI TERMINATION PAYMENT ............................................................... 9

V. PLAINTIFF'S CLAIM FOR INDEMNIFICATION
IS INVALID AS A MATTER OF LAW ............................................................... 9

CONCLUSION ................................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Arcadian Phosphates v Arcadian Corp.,*
    884 F2d 69 (2d Cir. 1989) .................................................................... 8

*Burdett Radiology Consultants, P.C. v. Samaritan Hosp.,*
    158 A.D.2d 132, 557 N.Y.S.2d 988 (3d Dep't 1990) .......................... 4, 5

*Care Travel Co., Ltd. v. Pan American World Airways, Inc.,*
    944 F.2d 983 (2d Cir. 1991) .................................................................. 6

*Carmeuse v. M.J. Stavola Indus., Inc.,*
    823 F. Supp. 125 (S.D.N.Y. 1993) ........................................................ 9

*Cosmas v. Hassett*, 886 F.2d 8 (2d Cir. 1989) .............................................. 3

*Goodstein Constr. Corp. v. N. Y.,*
    80 N.Y.2d 366, 590 N.Y.S.2d 425 (1992) ............................................. 6

*Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293,
    461 N.Y.S.2d 232 (1983) ....................................................................... 4

*Roth v. Jennings,* 489 F.3d 499 (2d Cir. 2007) .............................................. 2

*Sabetay v. Sterling Drug, Inc.,* 69 N.Y.2d 329,
    514 N.Y.S.2d 209 (1987) .................................................................. 4, 5

*Teachers Insurance & Annuity Ass'n v. Tribune Co.,*
    670 F. Supp. 491 (S.D.N.Y. 1987) ........................................................ 8

**RULES**

Fed R. Civ. P. (12)(b)(6) ................................................................................ 1

## **INTRODUCTION**

Defendant Korat Waste to Energy Co. Ltd. ("KWTE") submits this reply in further support of its motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiff International Finance Corporation's ("IFC's") Complaint.

IFC's responsive Brief offers no justification for delaying dismissal of the Complaint. Instead, IFC strives mightily to avoid any scrutiny of the legal adequacy of its allegations. IFC first sets forth considerable factual argument in an attempt to rehabilitate its fatally defective Complaint. (IFC Brief at 2-5, 10-12, 13, 21.) Much of that argument is wrong, and all of it is irrelevant to this motion.

Ironically, IFC then argues at length that *KWTE* is asking the Court to decide disputed facts. (IFC Brief at 5-9.) But as KWTE made clear, "this Court need not resolve any contested factual issues in deciding that IFC has not stated any valid claims...." (KWTE Brief at 2.) The Court need only apply the applicable law to IFC's Complaint submissions.

Finally, IFC argues at pages 7-9 of its brief that this Court is obligated to ignore the portions of IFC's Complaint submissions that directly contradict IFC's raw assertions that its causes of action are valid. This argument is a red herring. KWTE's motion relies on the Complaint itself; the Letter of Intent (KWTE Brief, Exh. A); the e-mails attached to IFC's Complaint regarding negotiations between the parties (Complaint Exhs. B-F); and the September 2005 Term Sheet in which IFC states categorically that there was no contract between the parties (KWTE Brief, Exh. B). IFC concedes that the LOI is the sole basis for Count I, and is integral to Counts I, III and IV; thus, there appears to be no dispute that the Court can properly rely on the LOI in determining the validity of these three counts. Regarding the e-mails, IFC specifically relies on them to attempt to plead the existence of a contract in June 2005, and they are actually attached to the Complaint as exhibits; thus, again, it seems undisputed that these e-mails are properly before the Court.

As for the September 2005 Term Sheet, it is clear even without reference to that document that IFC cannot maintain a valid claim for breach of contract. As noted in KWTE's opening brief at 9-11 and Section III(A) below, the May-June 2005 e-mails simply do not reflect any agreement on any contract terms. Moreover, by its own Complaint admissions, IFC continued to make offers as to the material terms of price and quantity long after June 2005. (KWTE Brief at 13-14; Section III(A), *infra*.)

The September 2005 Term Sheet is nevertheless important because it is IFC's own statement that the parties did not have a contract, just three months after IFC now says a binding agreement existed. (KWTE Brief, Exh. B, at 1.) It is perhaps not surprising, but nevertheless disappointing, that IFC would seek to conceal this document. IFC cannot seriously argue that its contract claim can survive its own clear statement in the Term Sheet that the parties were not bound in any way to any terms.

As discussed in KWTE's opening brief, Second Circuit precedent clearly holds that, on a motion to dismiss, the Court should not accept allegations that are contradicted by written materials properly before the Court. (KWTE Brief at 5-6.) This case is precisely the reason for the rule. IFC claims that the September 2005 Term Sheet was a "final" document that "addressed all material terms, including price and quantity, upon which IFC and Korat had reached agreement for the proposed ERPA." (Complaint ¶¶ 4, 19.) But the actual Term Sheet document makes clear that IFC must know this allegation is false. If the Court were prohibited from even considering the Term Sheet, IFC could potentially sustain a cause of action merely by misrepresenting its own documents. Fortunately, the law does not require such a perverse result.[1]

---

[1] IFC argues that Second Circuit law holds that "a document [not attached to the complaint nor incorporated by reference] upon which the complaint *solely* relies and which is *integral to the complaint* may be considered by the court in ruling on a motion to dismiss," quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007). (IFC Brief at 8.) To the extent IFC is suggesting that a document must be both the sole basis for the Complaint and integral to the Complaint before it can be considered by the Court, that is clearly not the holding of *Roth*. To the contrary, *Roth* holds that "[d]ocuments that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.*

2

IFC's gamesmanship regarding the September 2005 Term Sheet makes clear that its true goal in bringing this case is not to litigate a real dispute or to recover real damages. Instead, IFC is seeking to coerce KWTE into signing a contract by imposing the costs and disruption of mounting a defense against frivolous claims. This Court should not allow IFC to misuse the process in this manner.

Again, the breach of contract claim is infirm for other reasons. Likewise, none of IFC's other claims withstand scrutiny. The Complaint should be dismissed in its entirety.

## I.   PLAINTIFF'S CLAIM ALLEGING LIABILITY FOR BREACH OF AN IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING IS INVALID AS A MATTER OF LAW

### A.   Paragraph 7(b) Of The LOI Bars IFC's Implied Covenant Claim

Paragraph 7(b) of the LOI states explicitly that KWTE could terminate the LOI at any time, "with or without cause," and that KWTE had no obligation whatsoever to enter into a contract with IFC. (KWTE Brief Exh. A at 3.) Moreover, the LOI states that, once a party terminates the LOI, neither party has any obligation to the other, nor has any liability arising from the LOI, except for a termination fee in the case of KWTE. (*Id.*)

IFC's implied good faith covenant claim is obviously based on an alleged obligation under the LOI, and seeks to impose liability allegedly arising from the LOI. Indeed, IFC's Brief affirmatively states that "IFC's cause of action for breach of the covenant of good faith and fair dealing is premised on the LOI." (IFC Brief at 10.)

The Complaint alleges that KWTE terminated the LOI on March 2, 2007. (Complaint ¶ 6.) The terms of Paragraph 7(b) barring any liability under the LOI then went into effect. IFC's

---

The September 2005 Term Sheet clearly is incorporated into the Complaint by reference. IFC characterizes its reliance on the Term Sheet in the Complaint as a "fleeting reference," in an attempt to bring this case within *Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir. 1989). But as noted, IFC relies heavily on the existence of the Term Sheet to support its assertion that the parties had agreed on contract terms. (*E.g.,* Complaint ¶¶ 4, 19.) These specific allegations, obviously crafted to support IFC's core contention that the parties had agreed on material terms of a contract, stand in stark contrast to the references in the *Cosmas* complaint, which contained mere "brief excerpt[s]" of the documents in question that "merely discussed [the disputed] documents and presented short quotations from them." 886 F.2d at 15. Where, as here, the document is incorporated by reference, *Cosmas* holds that it may be considered on a motion to dismiss. *Id.*

3

claim based on an alleged breach of an implied covenant of good faith and fair dealing in the LOI was expressly extinguished by Paragraph 7(b), and Count I should therefore be dismissed on this ground alone.

### B. KWTE's Express Right To Terminate Negotiations Bars IFC's Proposed Implied Covenant To Negotiate In Good Faith Under New York Law

IFC agrees, as it must, "that courts will not apply an implied covenant of good faith and fair dealing where doing so will add new terms to an agreement, or otherwise alter the agreement in a way the parties did not intend." (IFC Brief at 12.) IFC nevertheless argues that an implied obligation to negotiate in good faith can be limited to pre-termination conduct, thus somehow preserving the express right to terminate negotiations at will. (IFC Brief at 13.) This is nonsensical and contrary to New York law. In New York, there is no implied obligation to exercise good faith in performing the contract even prior to actual termination if a party has an express right to terminate.

In this respect, this case is indistinguishable from *Burdett Radiology Consultants, P.C. v. Samaritan Hosp.*, 158 A.D.2d 132, 557 N.Y.S.2d 988 (3d Dep't 1990), which KWTE discussed at page 15 of its opening brief. There, plaintiffs alleged that defendants had breached the covenant of good faith and fair dealing not in *terminating* the contract, but in hiring plaintiffs' former employee while *performing* the contract. Defendants terminated the contract after the alleged bad-faith conduct. 158 A.D.2d at 134-35, 557 N.Y.S.2d at 989. The court held that "[s]uch an implied covenant ... does not apply to a party's express right to terminate a contract." 158 A.D.2d at 136, 557 N.Y.S.2d at 991, citing *Sabetay v. Sterling Drug, Inc.*, 69 N.Y.2d 329, 335-336, 514 N.Y.S.2d 209, 212-213 (1987). Under IFC's view of the law, the *Burdett* defendants' express right to terminate would be irrelevant because plaintiffs alleged bad faith in performing the contract, not in terminating the contract. That is obviously a misreading of *Burdett* and of New York law.

IFC further argues at page 13 of its brief that cases such as *Sabetay* and *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 304-05, 461 N.Y.S.2d 232, 237-38 (1983),

4

holding in the employment context that no implied covenant of good faith and fair dealing can be implied if the contract can be terminated at will (*see* KWTE Brief at 14-16), are inapposite simply because the contracts in those cases were employment contracts. Curiously, IFC ignores *Burdett*, a non-employment case. In any event, the *Burdett* court had no difficulty in relying on *Sabety*, an employment case, in holding that an express right to terminate a radiological services contract precluded any implied covenant of good faith. *Burdett*, 158 A.D.2d at 136, 557 N.Y.S.2d at 991, *citing Sabetay*, 69 N.Y.2d at 335-336.

KWTE's express right to terminate negotiations trumps any implied obligation to continue negotiations. Count I should be dismissed on this independent ground as well.

## II.   IFC'S CLAIM FOR CONTRACT EXPECTATION DAMAGES BASED ON THE ALLEGED BREACH OF AN IMPLIED COVENANT IN A NON-BINDING LETTER OF INTENT SHOULD BE DISMISSED

### A.   The LOI Bars Expectation Damages For An Alleged Breach Of The LOI

As noted, Paragraph 7(b) of the LOI states that, once a party terminates the LOI, neither party has any obligation to the other, nor has any liability arising from the LOI, except for a termination fee in the case of KWTE. (KWTE Brief, Exh. A at 3.) In turn, Paragraphs 7(d) and (g) specify the fee to be paid if KWTE terminates the LOI. (*Id.* at 4, 5.)

IFC does not and cannot dispute that Paragraph 7(b) expressly limits IFC's damages to the LOI's termination payment. Nor does IFC dispute that the computation of the termination payment is expressly set forth in Paragraphs 7(d) and (g) of the LOI. Thus, paragraphs 7(b), (d) and (g) of the LOI, standing on their own, are dispositive as to plaintiff's claim for expectation damages based on an alleged implied covenant of good faith. There is simply no reason to allow IFC to continue to litigate claims that it agreed to extinguish. IFC's claim for such contract expectation damages should therefore be summarily dismissed.

    **B.**    **In Any Event, New York Law Bars Expectation Damages For An Alleged Breach Of An Implied Covenant Of Good Faith Where There Is An Express Right To Terminate The Contract**

IFC's only argument against dismissal of its claim for expectation damages for breach of an implied duty to negotiate is that New York law does not bar a recovery for lost profits under some circumstances, and that it is premature to decide at this juncture that IFC cannot support a claim for such damages. (IFC Brief at 13-15.) But that misstates both the law and KWTE's argument. New York law allows expectation damages in *contract* cases where such damages can be determined with reasonable certainty, but does not allow a plaintiff to recover expectation damages where there is no contract and where the defendant has the right not to enter into a contract. IFC does not allege that the LOI was a contract that would have had any capability of generating lost profits, and the LOI is clear that KWTE had no obligation to enter into such a contract.

IFC cites one case, *Care Travel Co., Ltd. v. Pan American World Airways, Inc.*, 944 F.2d 983 (2d Cir. 1991), for the unremarkable proposition that "the Second Circuit has allowed recovery of lost profits when plaintiff has met the standard of recovery for damages." (IFC Brief at 14.) But that was a case where the parties had an actual contract, and the issue was thus whether the proof of any lost profits based on the terms of the contract was sufficiently definite. 944 F.2d at 994. Where there is no contract, allowing contract expectation damages based on an alleged breach of an implied covenant of good faith and fair dealing would "be transforming an agreement to negotiate for a contract into the contract itself." *Goodstein Constr. Corp. v. N. Y.*, 80 N.Y.2d 366, 373, 590 N.Y.S.2d 425, 429 (1992). There is no support in either the LOI or applicable law for such a claim, and it therefore should be dismissed.

**III.**    **PLAINTIFF'S CONTRACT CLAIM IS INVALID AS A MATTER OF LAW**

    **A.**    **IFC Does Not, And Cannot, Identify Any Agreement Between The Parties As To Any Contract Terms**

In Count II, IFC alleges in the alternative that an exchange of e-mails in May-June 2005 formed a binding contract between KWTE and IFC in June 2005 to buy and sell CERs, and that

the parties agreed upon a "final Term Sheet," dated September 21, 2005, setting forth terms agreed to in June 2005. The core problem with this allegation is that IFC has never identified an offer and acceptance of common contract terms. IFC's brief does not cure this deficiency. To the contrary, it makes clear that IFC cannot allege the existence of any agreement.

KWTE's opening brief carefully tracked the referenced e-mail exchange and demonstrated that they flatly contradict IFC's raw assertion that there was an offer and acceptance of common terms in the May-June 2005 e-mail exchange. (KWTE Brief at 10-11.)

IFC's response merely repeats its assertion that in a June 10, 2005 12:24 p.m. e-mail, IFC and Defendant agreed on a price/quantity combination of EUR 4.25 for one and three-quarter million CERs. (IFC Brief at 3 and n.2.) But again, that is not what the June 10 12:24 p.m. e-mail says. Instead, that e-mail reflects that KWTE had made a May 26, 2005 e-mail proposal to sell 1.5 million tons of CERs for 4.75 euros per ton, and that IFC made a *counter-proposal* to increase the quantity to 1.75 million tons and lower the price to 4.25 euros per ton. (June 10, 2005 12:24 p.m. e-mail from Locklin to Cook, Complaint Exh. D at 1.) There was thus no agreement as to any material terms.[2] IFC cannot re-write this document to avoid dismissal.

Moreover, IFC simply does not address the fact that, according to its own Complaint, the material terms of price and quantity continued to be negotiated for over a year after the May-June 2006 e-mail exchange. (KWTE Brief at 13-14.) Indeed, IFC affirmatively alleges that IFC changed the price and quantity terms of its offer on several occasions long after June 2005. (E.g., Complaint ¶¶ 4, 26, 27, 31.) These allegations of new offers by IFC on material terms cannot be squared with the notion that a binding agreement was reached in June 10.

Finally, the September 2005 Term Sheet is dispositive by itself. Obviously, there could be no binding June 2005 contract if there was no contract as of September 2005. IFC's cynical response that the Court should ignore the Term Sheet should be rejected.

---

[2] Moreover, IFC's counter-proposal nullified any offer by KWTE as a matter of law. (*See* KWTE Brief at 9-11, 20.)

IFC is left to argue at pages 15-21 of its brief that the parties had reached a "preliminary agreement" that was binding without further memorialization in an executed document. But IFC's reliance on the line of New York federal authority governing such "preliminary agreements" misses the point: Both types of enforceable "preliminary agreements" require that the parties actually agree either on all terms or on the major terms.

The seminal case on binding preliminary cases is *Teachers Insurance & Annuity Association v. Tribune Co.*, 670 F. Supp. 491 (S.D.N.Y. 1987), in which Judge Leval identified two types of binding preliminary agreements. 670 F. Supp. at 498. In a Type I agreement, "the parties have reached complete agreement (including the agreement to be bound) on all the issues perceived to require negotiation." A Type II agreement expresses mutual commitment to a contract on agreed major terms, while recognizing the existence of open terms that remain to be negotiated." *Id*. Thus, both Type I and II agreements require both an agreement as to at least the major terms and an overall agreement to be bound by the preliminary agreement. *See Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2nd Cir. 1989). No such agreement is properly alleged here.

### B.  The Parties Expressly Agreed Not To Be Bound In Any Way Unless They Executed A Final Emission Reduction Purchase Agreement

IFC also ignores the fact that the parties here expressly stated that there could be no binding contract unless and until a final ERPA was executed. Paragraph 2 of the LOI states: "Nothing contained in this Letter Agreement will commit the Trustee to purchase Emission Reductions from the Project Company unless and until the Project Company and the Trustee have executed an ERPA and the terms and conditions of such ERPA are satisfied." (KWTE Brief, Exh. A at 1-2.) Similarly, the 2005 Term Sheet states explicitly that the parties will not be bound by any terms absent a final, executed contract. (KWTE Brief, Exh. B at 1.)

IFC acknowledges that whether the agreement sought to be enforced is customarily put in writing is an element of both types of preliminary agreements. (IFC Brief at 17-18, 20); *see also Tribune*, 670 F. Supp. at 503. Here, of course, the parties explicitly stated that they would not be

8

bound absent a final written, signed and complete agreement. There is simply no basis for concluding that the May-June 2005 e-mail exchange constituted an agreement, preliminary or otherwise.

IFC's Complaint submissions establish that there was no binding contract between the parties, and certainly that none existed in June 2005. Plaintiff's allegations to the contrary are contradicted by IFC's own documents, and should be rejected. Count II should be dismissed.

## IV. PLAINTIFF HAS REFUSED TO ACCEPT THE LOI TERMINATION PAYMENT

IFC alleges in its brief at page 23 that KWTE, by acknowledging that it is obligated to pay a termination fee to IFC under the LOI, "has thus conceded that IFC has stated a claim for termination payments, as well as the amount of payments sought by IFC." (IFC Brief at 23.) That is not accurate. KWTE has always acknowledged that a termination fee was due. As KWTE stated in its brief at 21, IFC has refused to invoice or accept KWTE's payment. When IFC does so, that will resolve any issues between the parties.

## V. PLAINTIFF'S CLAIM FOR INDEMNIFICATION IS INVALID AS A MATTER OF LAW

IFC cannot convert the LOI's standard indemnification clause into a vehicle for a first-party recovery of full contract expectation damages. As KWTE pointed out in its opening brief, the plain language of the indemnity limits KWTE's exposure to those "losses, claims, damages or liabilities *to which the Trustee, IFC, its governors, directors, employees, agents, consultants or legal Counsel (each, an "Indemnified Party") may become subject*...." (KWTE Brief at 21.) Thus, if IFC is not the liable party, there is no right to indemnification. This obviously excludes claims by IFC that KWTE is liable to IFC.[3]

## CONCLUSION

---

[3] Thus, IFC's reliance on *Carmeuse v. M.J. Stavola Indus., Inc.*, 823 F. Supp. 125 (S.D.N.Y. 1993) for the proposition that a indemnity that broadly defines the *types* of indemnified liabilities might be read to allow first-party liability (IFC Brief at 24) is irrelevant to the indemnity provision here, which limits indemnity as to *any* type of claim to those brought *against* IFC.

9

For all the foregoing reasons, and for the reasons previously stated, plaintiff's Complaint should be dismissed and plaintiff's demand for damages should be stricken.

Respectfully submitted,

September 21, 2007

_____/s/_____
Anthony F. King
WALLACE KING DOMIKE & REISKIN, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: 202.204.1000
Facsimile: 202.204.1001

Elkan Abramowitz (EA-3987)
Thomas M. Keane (TK-6320)
MORVILLO, ABRAMOWITZ, GRAND,
IASON, ANELLO & BOHRER, P.C
565 Fifth Avenue
New York, NY 10017
Telephone: 212.880.9300
Facsimile: 212.856.9494

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 21st day of September 2007, I electronically filed the Reply Memorandum in Support of KWTE's Motion to Dismiss the Complaint with the Clerk of Court using CM/ECF which will send notification of filings to all counsel of record, and that I have caused the Reply Memorandum in Support of KWTE's Motion to Dismiss the Complaint to be sent by email to the following counsel:

> FRANCIS A. VASQUEZ, JR.
> Claire A. DeLelle
> White & Case, LLP
> 701 Thirteenth Street, NW
> Washington, D.C. 20005
> fvasques@whitecase.com
> cdelelle@whitecase.com

/s/ Eileen Schwartz
J. Eileen Schwartz