IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL FINANCE CORPORATION, not in its individual capacity, but solely as the Trustee for the IFC-Netherlands Carbon Facility,<br><br>Plaintiff,<br><br>v.<br><br>KORAT WASTE TO ENERGY CO. LTD. (a/k/a Khorat Waste to Energy Co.),<br><br>Defendant. | 07 Civ. 5451 (SHS) |

**MEMORANDUM IN SUPPORT OF
KWTE'S MOTION TO VACATE DEFAULT
AND TO FILE ITS ANSWER OUT-OF-TIME
AND OPPOSITION TO MOTION FOR DEFAULT JUDGMENT**

Defendant Korat Waste to Energy Co. Ltd. ("KWTE" or "Korat") submits this memorandum in support of its motion pursuant to Rule 55(c) of the Federal Rules of Civil Procedure to set aside the default entered on April 14, 2008 and to allow KWTE to file its answer out-of-time, and in opposition to Plaintiff International Finance Corporation's ("IFC's") Motion for Default Judgment.

IFC filed its motion for a default judgment at nearly 11:00 p.m. on April 14, four days after the answer date, without any notice to KWTE that it would seek a default judgment, and without making any inquiry as to whether KWTE intended to answer or had simply inadvertently failed to answer. (King Dec., Exhibit A, at ¶¶ 2, 3.) After having lost much of its case on a motion to dismiss, IFC seeks to take advantage of an inadvertent and harmless miscue to short-circuit litigation of its remaining substantial count.

This is not a case where the Defendant stood by and did nothing. To the contrary, KWTE timely responded to the four-count Complaint by filing a motion to dismiss which was largely successful in that it resulted in the dismissal of Counts II, IV and the primary damages aspect of Count I. The remaining Count III should never have been brought, as KWTE has never contested liability under that Count.

Moreover, KWTE has filed a motion for summary judgment regarding the quantum of damages available for Count I. Admittedly, this does not further stay the time for filing an answer. However, it evidences the fact that the claim is being actively contested by the parties. Even beyond the issue of damages, the substantive issues asserted in Count I – IFC's allegations that KWTE acted in bad faith in negotiating under a Letter of Intent ("LOI") – are serious and deserve a full hearing if justified by the amount of recoverable damages.

Moreover, the partial answer was due only four days before the default was entered. That brief oversight was inadvertent and unintentional, and IFC cannot claim any prejudice arising from that extremely short delay, much of which occurred over a weekend.

On March 27, 2008, this Court issued a ruling from the bench granting in part and denying in part KWTE's motion to dismiss Complaint. The Court's ruling dismissed Counts II and IV for breach of contract and indemnification, and left standing Count III for a termination payment under the LOI because KWTE has never disputed that some payment was due. Most importantly, the Court held that IFC's Complaint had sufficiently stated a claim for breach of the LOI's implied covenant of good faith and fair dealing, but ruled that IFC's recovery was limited to reliance, not restitution damages. The Court then set a conference for April 25 and urged the parties to attempt to resolve their outstanding discovery disputes, and indeed the entire matter given the Court's ruling.

To that end, the parties requested an extension of the discovery deadline from May 28 to July 15, noting to the Court: "In light of your Honor's March 27, 2008 decision on KWTE's motion to dismiss, the parties agree that it would be most efficient to attempt to settle the

remaining claims before expending further party and judicial resources." (April 2, 2008 Vasquez Letter, Doc. 24 at 1; King Dec., Exhibit A, at ¶ 4.)

Without intruding on the privacy of settlement negotiations, it is safe to say that the intervening period has been tumultuous. Ultimately, over the weekend of April 4-5, the parties reached the conclusion that discovery had to resume, and the parties rapidly increased the pace of the litigation. (King Dec., Exhibit A, at ¶¶ 5-6.) In the midst of that resumption of heightened activity, counsel for KWTE inadvertently delayed filing the answer until April 15 instead of April 10.

"It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits." *Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001). "[B]ecause defaults are generally disfavored and are reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (1993).

Applying these principles, and pursuant to Fed. R. Civ. P. 55(c), this Court may set aside an entry of default for good cause. In considering whether "good cause" is shown under Rule 55(c) the Second Circuit considers "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil*, 10 F.3d at 96. Under these criteria, and consistent with the disfavor with which defaults are held, the default here should be vacated.

There is no allegation here that the default was willful, nor could there be. To the contrary, KWTE has vigorously contested IFC's allegations throughout, and has a summary judgment motion pending. Nor can IFC claim prejudice from the five-day period from April 10 to April 15, especially given that two of those days fell on a weekend and at least one day was spent preparing its default papers.

Finally, KWTE has meritorious defenses. "The test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98.

Count I relies on three allegations: (1) that KWTE was untimely in providing information and assistance to IFC; (2) that KWTE agreed on material terms yet failed to complete an ERPA with IFC; and (3) Paragraph 5 of the LOI was an "exclusivity provision" that prohibited KWTE from discussing the sale of its CERs to third parties. (Complaint ¶¶ 42, 43.)

The attached declaration of Granville Smith of KWTE, along with the record evidence, if taken as true, constitutes a complete defense. Mr. Smith states that IFC presented KWTE with a lengthy, overly-complicated and unworkable draft ERPA in October 2005; that IFC was inflexible and unresponsive to KWTE's concerns that were expressed in a November 2005 memorandum; and that IFC did not produce a substantially revised ERPA in response to KWTE's concerns until well into 2006. (Smith Dec., Exhibit B, at ¶ 3.) As for (2), this Court has already concluded that KWTE did not agree on material terms to a contract with IFC. (Smith Dec., Exhibit B, at ¶ 5.) As for (3), Mr. Smith confirms that, contrary to IFC's allegations, the parties never agreed that Paragraph 5 of the LOI barred KWTE from negotiating with other parties concerning KWTE's CERs, and that KWTE would never have agreed to accept such an indefinite unilateral condition on its ability to seek a commercially viable deal while leaving IFC free to purchase CERs elsewhere. (Smith Dec., Exhibit B, at ¶ 6.) Moreover, as Mr. Smith notes, the LOI extinguishes all alleged obligations under the LOI upon termination by either party. (Smith Dec., Exhibit B, at ¶ 7.)

As for Count III, even though KWTE concedes that some termination payment is due, the amount of the termination payment due remains a disputed issue. Paragraphs 54 and 55 of the Complaint assert that IFC is due an additional payment under Paragraph 7(g) of the LOI because, IFC alleges, KWTE sold CERs to EcoSecurities. (Complaint ¶¶ 54, 55.) As Mr. Smith confirms, the true facts are that KWTE did not sell its CERs to any buyer. KWTE did sell a majority interest in KWTE to TEP Asia Limited. The LOI does not provide that such a sale of KWTE is a sale of Emission Reductions under Paragraph 7(g) of the LOI so as to trigger an additional payment to IFC. (Smith Dec., Exhibit B, at ¶ 8.)

If this proffered evidence is proven true at trial, it will constitute a complete defense. Thus, under the Rule 55(c) criteria, read liberally in favor of the Defendant as it must be, the default should be vacated. Moreover, for all the same reasons, the motion for entry of a default judgment should be denied

## CONCLUSION

For all the foregoing reasons, Defendant respectfully requests that the default be vacated and that its answer be accepted for filing. Defendant further respectfully requests that the motion for default judgment be denied.

Respectfully submitted,

April 15, 2008

_____/s/_____
Anthony F. King
Amanda Gilbert
WALLACE KING DOMIKE & REISKIN, PLLC
1050 Thomas Jefferson Street, N.W.
Washington, D.C. 20007
Telephone: 202.204.1000
Facsimile: 202.204.1001

Elkan Abramowitz (EA-3987)
Thomas M. Keane (TK-6320)
MORVILLO, ABRAMOWITZ, GRAND,
  IASON, ANELLO & BOHRER, P.C
565 Fifth Avenue
New York, NY 10017
Telephone: 212.880.9300
Facsimile: 212.856.9494

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL FINANCE CORPORATION, not in its individual capacity, but solely as the Trustee for the IFC-Netherlands Carbon Facility,<br><br>Plaintiff,<br><br>v.<br><br>KORAT WASTE TO ENERGY CO. LTD. (a/k/a Khorat Waste to Energy Co.),<br><br>Defendant. | 07 Civ. 5451 (SHS) |

## DECLARATION OF ANTHONY F. KING

I, ANTHONY F. KING, declare as follows:

1.  I am an attorney with the law firm Wallace King Domike & Reiskin, PLLC in Washington, DC. I represent Defendant Korat Waste to Energy Co., Ltd. ("KWTE") in the above-captioned matter. I submit this declaration in support of KWTE's Motion to Vacate Default and to File its Answer Out-of-Time and Opposition to Motion for Default Judgment.

2.  The docket reflects that IFC filed its motion for a default judgment at nearly 11:00 p.m. on April 14, four days after the answer date.

3.  KWTE received no prior notice from IFC that IFC would seek a default judgment, nor did IFC make any inquiry as to whether KWTE intended to answer or had simply inadvertently failed to answer by April 10.

4.  On April 2, 2008, following the Court's March 27, 2008 ruling granting in part and denying in part KWTE's motion to dismiss, the parties submitted a joint

request to extend the discovery deadline from May 28 to July 15, stating that: "In light of your Honor's March 27, 2008 decision on KWTE's motion to dismiss, the parties agree that it would be most efficient to attempt to settle the remaining claims before expending further party and judicial resources." (April 2, 2008 Vasquez Letter, Doc. 24 at 1.)

5. Counsel for IFC and KWTE then had communications regarding settlement discussions that continued through the weekend of April 4-5. During that weekend, the parties concluded that discovery had to resume.

6. The parties immediately and rapidly accelerated their discovery activities. Those heightened discovery activities continue to the present date.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 15, 2008.

_____
Anthony P. King

2

# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INTERNATIONAL FINANCE CORPORATION, not in its individual capacity, but solely as the Trustee for the IFC-Netherlands Carbon Facility,<br><br>Plaintiff,<br><br>v.<br><br>KORAT WASTE TO ENERGY CO. LTD. (a/k/a Khorat Waste to Energy Co.),<br><br>Defendant. | 07 Civ. 5451 (SHS) |

## DECLARATION OF GRANVILLE SMITH

I, GRANVILLE SMITH, declare as follows:

1. I was the Chairman of the Board of Directors of Korat Waste to Energy Co., Ltd. ("KWTE") during May 2004. I was personally involved in the discussions with IFC in which KWTE and IFC unsuccessfully attempted to reach a contract to buy and sell carbon credits.

2. I have reviewed the Complaint filed in the above-captioned case by the International Finance Corporation, and I have focused on the allegations in Paragraphs 41-43, which appear to state IFC's alleged basis for its claim that KWTE acted in bad faith in negotiating pursuant to the May 17, 2004 Letter of Intent executed by International Finance Corporation and KWTE (the "LOI," attached hereto as Exhibit 1).

3. Paragraph 41 alleges that KWTE deliberately withheld information and assistance from IFC in violation of paragraph 14 of the LOI in order to delay negotiations because, according to IFC, KWTE had no intention of executing an ERPA with IFC and was instead using IFC as a "put option." The true facts are that, in October 2005, IFC sought to impose a mammoth and inflexible draft ERPA on KWTE, and refused to negotiate changes to its draft in

good faith. That complex and one-sided draft ERPA did not substantially change, despite KWTE's numerous complaints, until well into 2006. IFC's source of irritation was not that KWTE was denying IFC information; it was that KWTE would not immediately sign an ERPA that was both radically different than any ERPA KWTE had encountered before and which leaned heavily toward IFC.

4. IFC's charge that KWTE was using it as a "put option" is especially galling given the true facts. KWTE had no right whatsoever to "put" CERs to IFC. IFC had the absolute right to terminate negotiations at any time. Indeed, unlike KWTE, IFC did not have to make a termination payment to walk away. (LOI, Ex. 1, at 7(a)(i).)

5. IFC states in Paragraph 42:

> Despite having agreed in principle on all material terms in the final Term Sheet of September 21, 2005, Korat failed and refused, without legal cause or justification, to negotiate with IFC in good faith to complete the proposed ERPA.

(Complaint ¶ 42.) The true facts are that KWTE never agreed to material terms with IFC. I understand that the Court agreed that this was so.

6. Next, IFC says in Paragraph 43 of the Complaint that "Korat ... violated the exclusivity provision contained in Paragraph 5 of the LOI by conducting negotiations, to which it has admitted, with third party purchasers prior to the termination of the LOI." (Complaint ¶ 43.) The true facts are that Paragraph 5 is titled "INCaF's Preferential Status," not "Exclusive Negotiation Rights" or anything of the sort. KWTE never bargained away its right to talk to other potential customers for its CERs. Indeed, it would have been irrational to do so, for at least two reasons. First, KWTE and IFC were in talks for three years, and it would have been beyond unreasonable for KWTE to have committed to talking to a single party for that length of time. Second, IFC would not have been equally bound, and could have negotiated with different sellers even as KWTE was barred from talking with different buyers. KWTE would not and did not agree to such an unfair arrangement.

2

7.      Paragraph 7(b) of the LOI states: "Any ... termination [by either party] shall release [KWTE] and [IFC] from all of their respective obligations under this Letter Agreement, including any liabilities arising therefrom, except as provided in Paragraph 7."

8.      I have also reviewed Paragraphs 54 and 55 of the Complaint. Paragraph 54 falsely alleges that KWTE sold CERs to EcoSecurities. The true facts are that KWTE did not sell its CERs to any buyer. KWTE did sell a majority interest in KWTE to TEP Asia Limited. The LOI does not provide that such a sale of KWTE is a sale of Emission Reductions under Paragraph 7(g) of the LOI so as to trigger an additional payment to IFC.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 15, 2008.

_____
Granville Smith