UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INTERNATIONAL FINANCE CORPORATION,
not in its individual capacity but solely as the
Trustee for the IFC-Netherlands Carbon Facility,     07 Civ. 5451 (SHS) (ECF)

        *Plaintiff,*

  -against-

KORAT WASTE TO ENERGY CO. LTD.,
(a/k/a KHORAT WASTE TO ENERGY CO.),

        *Defendant.*

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**WHITE & CASE** LLP

Francis A. Vasquez, Jr. (FAV-1446)
Dana E. Foster (DF-9389)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

April 24, 2008            *Counsel for International Finance Corporation*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ...............................................................................................................1

STATEMENT OF FACTS ..................................................................................................2

ARGUMENT .......................................................................................................................3

    I.    KORAT'S MOTION IS PREMATURE .................................................................3

    II.    KORAT IS NOT ENTITLED TO SUMMARY JUDGMENT ...............................5

        A.    Korat Has Not Carried Its Burden Under Rule 56 .......................................5

        B.    There Are Genuine Issues Of Fact As To Damages Under Count One ...............................................................................................................7

            1.    Paragraph 7 of the LoI is a Termination Fee Provision ...................7

            2.    In Count One, IFC Seeks Damages for the Breach of the Implied Covenant of Good Faith and Fair Dealing in Negotiating the ERPA ........................................................................8

            3.    Under New York Law, IFC is Entitled to Reliance Damages Incurred From Korat's Bad Faith .....................................9

CONCLUSION .................................................................................................................10

-i-

# **TABLE OF AUTHORITIES**

**CASES**                                                                                                               **PAGE**

*Allstate Ins. Co. v. Administratia Asigurarilor De Stat*,
   948 F. Supp. 285 (S.D.N.Y. 1996)..................................................................................4

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)............................................................................................................5

*Camperlino & Fatti Builders, Inc. v. Dimovich Constr. Corp.*,
   198 A.D.2d 803 (N.Y. App. Div. 1993) ............................................................................10

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................................4

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
   47 F.3d 39 (2d Cir. 1995) ..............................................................................................9, 10

*Cyberchron Corp. v. Calldata Sys. Dev., Inc.*,
   831 F. Supp. 94 (E.D.N.Y. 1993) ......................................................................................9

*Entergy Servs., Inc. v. Union Pac. R.R. Co.*,
   35 F. Supp. 2d 746 (D. Neb. 1999) ....................................................................................9

*Gruber v. S-M News Co.*,
   126 F. Supp. 442 (S.D.N.Y. 1954)...................................................................................10

*Holcomb v. Iona Coll.*,
   Civ. No. 06-3815-CV, ---F.3d----, 2008 WL 852129 (2d Cir. Apr. 1, 2008) ....................5

*Kalisch-Jarcho, Inc. v. City of New York*,
   58 N.Y.2d 377 (N.Y. 1983) ...............................................................................................6

*Lucente v. Int'l Bus. Machs. Corp.*,
   310 F.3d 243 (2d Cir. 2002)...............................................................................................5

*Oscar Prods., Inc. v. Zacharius*,
   893 F. Supp. 250 (S.D.N.Y. 1995)...................................................................................10

*Perico, Ltd. v. Ice Cream Indus., Inc.*,
   Civ. No. 87 CIV 4211 (MBM), 1990 WL 11539 (S.D.N.Y. Feb. 9, 1990)......................10

*Short Clove Assocs., Inc. v. Ilana Realty, Inc. (In re Ilana Realty, Inc.)*,
   154 B.R. 21 (S.D.N.Y. 1993).............................................................................................9

*Williams and Sons Erectors, Inc. v. S.C. Steel Corp.*,
   983 F.2d 1176 (2d Cir. 1993).............................................................................................6

WASHINGTON 1395935 (2K)

| **OTHER AUTHORITIES** | **PAGE** |
| --- | --- |
| Fed. R. Civ. P. 56(f) | 1, 3, 4, 5 |

## **INTRODUCTION**

Defendant's Motion for Summary Judgment as to the Quantum of Reliance Damages Recoverable Under Count I of Plaintiff's Complaint (the "Motion") oddly seeks summary judgment on a central issue about which the parties are currently engaging in discovery. The Motion should be denied for several reasons.

First, it is premature. IFC has not had an opportunity to depose key Korat witnesses who participated in the drafting of the LoI, including Granville Smith, whose affidavit is attached to the Motion.[1] Despite Korat's repeated mantra, it is far from indisputable that Paragraph 7 of the LoI (the "Termination Provision") covers bad faith damages. The intent of the parties is important in determining what the parties contemplated when drafting the Termination Provision, yet no discovery on this issue has been taken. Because Korat has failed to even provide an opportunity for discovery, IFC is unable to present its complete response to the Motion. For that reason, Rule 56(f) of the Federal Rules of Civil Procedure demands that the Motion be denied until Korat provides IFC with the discovery to which IFC is entitled.

Second, as the Court determined in its decision on March 27, 2008, IFC is entitled to more than just the fees established under the Termination Provision. Under the law of the case, IFC has stated a claim for damages caused by Korat's breach of the implied covenant of good faith and fair dealing, Count One, that is separate and apart from Count Three, to which Korat has conceded liability. The Termination Provision does not contemplate those damages, and Korat has not proven, as a matter of law, that those damages are foreclosed. The Termination Provision permits the recovery of a fee "if the Project Company terminates this Letter Agreement or otherwise fails to fulfill its obligations under this Letter Agreement such as to effectively

---

[1] IFC had, in fact, noticed Mr. Smith's deposition for April 14, 2008. *See* Declaration of Francis A. Vasquez, Jr. dated April 24, 2008 ("Vasquez Decl.") ¶ 2. Korat asked that it be adjourned, and now takes the position that Mr. Smith is unavailable for deposition until July.

terminate this Letter Agreement . . . ." This fee includes certain appraisal and due diligence expenses. Paragraph 6(b) of the LoI states that, without a premature termination of the LoI, IFC will recover its appraisal and due diligence expenses "by amortizing them in the unit price paid for the Emission Reductions under the ERPA;" thus, the Termination Provision aims to compensate IFC for those appraisal and due diligence expenses in the event Korat prematurely terminated the LoI. There is no specific liquidated damages provision for breaches of the implied covenant of good faith and fair dealing in the LoI.

Finally, the LoI is, at the very least, ambiguous as to the expenses covered by the Termination Provision. Korat's repeated assertions that the provision is "unambiguous" and that the expenses covered are "indisputable" and "undisputed" are wrong. In fact, IFC expects to prove reliance damages in several categories in accordance with New York law, as described herein. In the meantime, this Court should deny the Motion and allow the parties to continue with discovery.

## STATEMENT OF FACTS

In May 2004, Plaintiff International Finance Corporation (IFC) and Defendant Korat Waste to Energy Co. Ltd. ("Korat") executed a Letter of Intent ("LoI") to enter into an Emission Reduction Purchase Agreement ("ERPA") allowing the Netherlands to purchase Korat's Certified Emission Reductions. Compl. ¶ 15. IFC negotiated with Korat to complete the ERPA "[i]n reliance on the provisions of the LoI, and upon other representations and warranties of Korat." Compl. ¶ 40. Korat failed to negotiate with IFC in good faith, thus breaching the implied covenant of good faith and fair dealing. Compl. ¶¶ 42, 44. Korat notified IFC on March 2, 2007, by letter that it purportedly terminated the LoI as of March 17, 2007, after more than a year of delay and obstruction. Compl. ¶¶ 30, 41-43, 53.

IFC has various claims for damages as a result of Korat's actions. IFC's claims for damages arose as a direct and proximate result of Korat's bad faith acts and omissions. Compl. ¶ 45. Korat has acknowledged that it owes IFC the termination fee under Paragraph 7. *See* Transcript of March 27, 2008 Hearing at 32:2-3 (attached as Exhibit 7 to the Vasquez Decl.). This Court has ruled that IFC will be entitled to reliance damages in connection with Korat's breach of good faith and fair dealing. IFC expects to prove damages in the following categories:

- IFC staff salaries for drafting the ERPA (Widge Decl. ¶ 2a; Vasquez Decl. ¶ 7a);

- Expenses for retaining outside English counsel for a separate review and revision of the ERPA (Widge Decl. ¶ 2b; Vasquez Decl. ¶ 7b);

- Expenses for retaining outside Canadian counsel to assist in drafting, redrafting, and negotiating the ERPA (Widge Decl. ¶ 2c; Vasquez Decl. ¶ 7c);

- IFC staff's wasted time in negotiating the ERPA (Widge Decl. ¶ 2d; Vasquez Decl. ¶ 7d);

- IFC's overhead expenses (Widge Decl. ¶ 2e; Vasquez Decl. ¶ 7e); and

- IFC's lost opportunity costs (Widge Decl. ¶ 2f; Vasquez Decl. ¶ 7f).

## ARGUMENT

### I. KORAT'S MOTION IS PREMATURE

IFC has not had an opportunity to depose key Korat witnesses who participated in the drafting of the LoI, including Granville Smith, whose affidavit was attached to the Motion. Korat's summary judgment motion is therefore premature and must be denied.

When a motion for summary judgment is filed before the completion of discovery, Rule 56(f) of the Federal Rules of Civil Procedure provides the non-moving party with an opportunity to object to the filing of the motion. In particular, the rule states that:

> **(f) When Affidavits are Unavailable.** Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for

> judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The purpose of this rule is to prevent parties from being "'railroaded' by a premature motion for summary judgment" before the non-moving party has had the opportunity afforded under the Federal Rules of Civil Procedure to make full discovery. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). "Rule 56(f) requires a court to ensure that parties have a reasonable opportunity to make their record before the court rules on a motion for summary judgment." *Allstate Ins. Co. v. Administratia Asigurarilor De Stat*, 948 F. Supp. 285, 293-94 (S.D.N.Y. 1996). Because it is a safeguard against premature grants of summary judgment, Rule 56(f) "should be applied with a spirit of liberality." *Id.* (internal quotation marks and citation omitted).

There has been no discovery in this case regarding the intentions of the parties when drafting the LoI. In fact, the parties are currently in the midst of discovery that will include the depositions of the key negotiators on both sides, including Granville Smith. According to his declaration, Mr. Smith hotly contests the allegations asserted in the Complaint and IFC's interpretation of the LoI. *See* Vasquez Decl. Ex. 4 ¶¶ 3, 4, 6, 8. The current status of discovery in this case makes the timing of Korat's summary judgment motion particularly improper. Indeed, it appears that Korat is seeking to avoid depositions altogether.[2] IFC objects to Korat's motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure, and submits the attached declaration of Francis A. Vasquez, Jr. in support. As Mr. Vasquez makes plain, IFC has been provided with no opportunity for discovery as to the intention of the parties negotiating the LoI. *See* Vasquez Decl. ¶ 6. Because no opportunity for discovery has been provided, IFC is unable to present its complete response. For that reason, the Motion should be denied.

---

[2] Korat now insists that Granville Smith and Ken Locklin are unavailable for deposition until July. Vasquez Decl. ¶¶ 2, 4. Korat has not provided dates for any of its other witnesses.

-4-

## II. KORAT IS NOT ENTITLED TO SUMMARY JUDGMENT

Even if the Court decides that Korat's motion is ripe for adjudication, it should be denied. Summary judgment is inappropriate because Korat has not carried its burden of proving that "no genuine issue of material fact exists." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 253 (2d Cir. 2002).

### A. Korat Has Not Carried Its Burden Under Rule 56

The test for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). When considering a motion for summary judgment, the Court must draw all inferences and ambiguities in favor of IFC, and "[t]he evidence of the non-movant is to be believed." *Lucente*, 310 F.3d at 254-55 (citing *Anderson*, 477 U.S. at 255) (internal quotation marks and citation omitted) (reversing summary judgment when the district court resolved factual disputes in the movant's favor); *see also Holcomb v. Iona Coll.*, Civ. No. 06-3815-CV, ---F.3d ----, 2008 WL 852129, at *6 (2d Cir. Apr. 1, 2008) ("[T]he court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.").

When contract terms are at issue, as they are in this case, summary judgment is inappropriate if the court does not fully accept either party's arguments as to the meaning of those terms. *Lucente*, 310 F.3d at 257 ("Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous.") (internal quotation marks and citation omitted). Despite Korat's repeated mantra of indisputable unambiguousness, the LoI is far from clear regarding the ramifications for one party breaching the implied covenant of good faith and fair dealing.

-5-

First, IFC's claims for damages do not "arise from" the LoI alone.  As stated in the Complaint, IFC relied on "the provisions of the LoI, and upon other representations and warranties of Korat" while negotiating the ERPA — *i.e.*, the bad faith conduct of Korat that caused IFC to expend unnecessary resources while Korat had no intention of completing an ERPA with IFC.  Compl. ¶ 40.  IFC also alleges that the damages for Korat's breach of the implied covenant of good faith and fair dealing arose "[a]s a direct and proximate result" of Korat's delay and obstruction in completing the ERPA.  Compl. ¶¶ 41-45.

Second, the Termination Provision applies only to damages arising from good-faith conduct.  New York law has long held that that "an exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances."  *Kalisch-Jarcho, Inc. v. City of New York*, 58 N.Y.2d 377, 384 (N.Y. 1983).  A party such as Korat, which has acted in bad faith, cannot shield itself with an exculpatory clause.  *See Williams and Sons Erectors, Inc. v. S.C. Steel Corp.*, 983 F.2d 1176, 1184 (2d Cir. 1993) (finding that an exculpatory clause "will not serve to prevent recovery of damages for delays caused by the [defendant]'s bad faith or its willful, malicious, or grossly negligent conduct").  Therefore, either because of its lack of causation or its exclusion of breaches of the covenant of good faith and fair dealing, the Termination Provision simply cannot "unambiguously" apply to Count One.

To grant the Motion, this Court must find that, ***as a matter of law***, the Termination Provision precludes IFC from collecting any additional damages under Count One of the Complaint.  But the Court has already determined that IFC is entitled to reliance damages on its claims for breach of the covenant of good faith and fair dealing, separate and apart from IFC's claim for termination of the LoI under Count Three.  On the facts submitted by Korat, which amount to little more than references to the LoI, Korat's motion must be denied.

-6-

### B.     There Are Genuine Issues Of Fact As To Damages Under Count One

Korat is wrong that it is "indisputable" that the damages under Count One of the Complaint are limited to the Termination Provision.

#### 1.     Paragraph 7 of the LoI is a Termination Fee Provision

By its plain language, the Termination Provision grants IFC the right to a termination fee. *See* May 2004 Letter of Intent ¶ 7 (attached as Exhibit 8 to the Vasquez Decl.) (permitting recovery "if the Project Company terminates this Letter Agreement or otherwise fails to fulfill its obligations under this Letter Agreement such as to effectively terminate this Letter Agreement"). This Court has stated as much. Vasquez Decl. Ex. 7 at 32:2-3 (finding that "termination payments are due under the termination clause"). Moreover, Korat has acknowledged this. *See* Letter from David Donnelly to Vikram Widge dated March 2, 2007 (attached as Exhibit 9 to the Vasquez Decl.) ("KWTE understands that its termination of the LOI pursuant to paragraph 7(a)(i) triggers a payment obligation under paragraph 7(d). KWTE will await your invoice.").

A reading of the entire LoI shows that the parties anticipated the fee under the Termination Provision as the cost for the premature termination of the LoI before an ERPA was executed. Beyond the language of the Termination Provision itself, the type of expenses the parties bargained for as the fee for premature termination indicates that these were costs associated with early termination, not damages for bad-faith conduct. The Termination Provision specifies that appraisal and due diligence expenses are included in termination expenses. Vasquez Decl. Ex. 8 ¶ 7(d). Schedule 1, section (e) of the LoI entitled "Appraisal and Due Diligence" describes the appraisal as including an evaluation of "the technical, commercial, financial and legal soundness of the Project," and an "Environmental and Social Review of the Project" comprised of a "field appraisal," "desk review," and "consultations." Vasquez Decl. Ex. 8 at Sch. 1(e).

-7-

Paragraph 6(b) of the LoI defines "Appraisal Expenses," which are specifically referenced in Paragraph 7(d) as part of the termination fee. Vasquez Decl. Ex. 8 ¶ 6(b). Along with the due diligence expenses, these appraisal expenses were those expenses the parties intended the termination fee to cover. These are not, however, the damages IFC seeks under Count One.

### 2. In Count One, IFC Seeks Damages for the Breach of the Implied Covenant of Good Faith and Fair Dealing in Negotiating the ERPA

As this Court has recognized, Count One seeks to recover damages for Korat's breach of the implied covenant of good faith and fair dealing:

> The complaint alleges that Korat breached the implied covenant of good faith and fair dealing with its conduct during the negotiation of the ERPA. The complaint 16 to 17 and 41 to 42. It does not allege that Korat breached the implied covenant of good faith and fair dealing by terminating the LOI.

Vasquez Decl. Ex. 7 at 17:25-18:5. These damages are fundamentally different than those contemplated by the Termination Provision. Rather than the expenses of consultations and evaluations relevant to an appraisal — expenses that IFC lost because of Korat's premature termination of the LoI — IFC seeks to recover the drafting and negotiation costs and lost opportunity damages that arose from Korat's bad acts as part of its breach of the covenant of good faith and fair dealing. These acts include, *inter alia*, Korat's delays in executing the ERPA, its attempts to force IFC to assume all risks of the project, and its lack of communication with IFC. *See, e.g.*, Compl. ¶ 31.

Korat's position that termination of the agreement absolves it of all bad acts and bad faith in negotiating the ERPA is incorrect, and contradicts the ruling that the Court has already made. Mot. at 3. The Termination Provision did not contemplate Korat's bad faith. Because Count One seeks damages beyond what the LoI contemplated, IFC's recovery is not limited to the

-8-

termination fee. Instead, IFC is entitled to the fee plus the reliance damages this Court referenced in its March 27, 2008 decision. Vasquez Decl. Ex. 7 at 20:12-13.

### 3. Under New York Law, IFC is Entitled to Reliance Damages Incurred From Korat's Bad Faith

Because Korat's bad faith caused IFC to incur damages beyond those anticipated in the Termination Provision, Korat is liable for reliance damages in addition to the termination fee. The bad faith of a party to a contract entitles the other party to damages above those contemplated in a termination fee. In *Short Clove Assocs., Inc. v. Ilana Realty Inc. (In re Ilana Realty, Inc.)*, 154 B.R. 21 (S.D.N.Y. 1993), this Court held that the defendant was liable for liquidated damages and additional damages, including legal fees, when, similar to Korat, it engaged in delay tactics over mere termination: "[B]y refusing to simply default and walk away, [the defendant] vitiated the liquidated damages clause." *Id.* at 27-28; *see also Entergy Servs., Inc. v. Union Pac. R.R. Co.*, 35 F. Supp. 2d 746, 755 (D. Neb. 1999) (citing *In re Ilana Realty*, 154 B.R. at 28) (holding that plaintiff could recover damages for breaches not specified in the liquidated damages clause). As the *Ilana Realty* court held, the additional damages were recoverable because they were "not for the breach" provided for by the liquidated damages provision, "but rather were incurred as a consequence of the breach" and the defendant's ensuing conduct. 154 B.R. at 29. Similarly, rather than merely terminating the LoI, Korat chose to delay execution of the ERPA and cause IFC to incur significant additional expenses. *See* Compl. ¶ 41.

IFC expects to be able to demonstrate that it has suffered the following categories of damages, which are all recoverable as reliance damages under New York law:

- IFC staff salaries for drafting the ERPA. *See Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 46-47 (2d Cir. 1995) (holding that plaintiffs could recover "reasonable overhead costs," including salaries); *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 831 F. Supp. 94, 107 (E.D.N.Y. 1993);

-9-

- Expenses for retaining outside English counsel for a separate review and revision of the ERPA. *See Perico, Ltd. v. Ice Cream Indus., Inc.*, Civ. No. 87 CIV 4211 (MBM), 1990 WL 11539, at *3 (S.D.N.Y. Feb. 9, 1990) (allowing the recovery of attorney's fees); *Gruber v. S-M News Co.*, 126 F. Supp. 442, 447 (S.D.N.Y. 1954) (allowing manufacturers to recover labor expenses as reliance damages); *Camperlino & Fatti Builders, Inc. v. Dimovich Constr. Corp.*, 198 A.D.2d 803, 804 (N.Y. App. Div. 1993) (awarding approximately $9,000 in attorney's fees incurred for anticipated sale of real property);

- Expenses for retaining outside Canadian counsel to assist in drafting, redrafting, and negotiating the ERPA. *See Perico*, 1990 WL 11539, at *3; *Camperlino*, 198 A.D.2d at 804.

- IFC staff's wasted time in negotiating the ERPA. *See Cyberchron*, 47 F.3d at 46-47;

- IFC's overhead expenses. *See Cyberchron*, 47 F.3d at 46-47; and

- IFC's lost opportunity costs. *See Oscar Prods., Inc. v. Zacharius*, 893 F. Supp. 250, 257-58 (S.D.N.Y. 1995) (allowing reliance damages for forfeiting endorsement opportunities).

Following the Court's ruling that only reliance damages were available, IFC has been working to update its Initial Disclosures with the calculations of the damages it has suffered. That information should be provided shortly, to the extent that it has not been provided already. *See* Widge Decl. ¶¶ 2a-f; Vasquez Decl. ¶¶ 7a-f.

## **CONCLUSION**

For all of these reasons, the Motion should be denied.

Dated:  April 24, 2008

Respectfully submitted,

**WHITE & CASE** LLP

/s/ Francis A. Vasquez, Jr.
Francis A. Vasquez, Jr. (FAV-1446)
Dana E. Foster (DF-9389)
701 Thirteenth Street, N.W.
Washington, D.C. 20005
(202) 626-3600

*Counsel for International Finance Corporation*